Phillips County vs. Lee County.

## PHILLIPS COUNTY VS. LEE COUNTY

1. LEE COUNTY: *Indebtedness to Phillips county. Appeal from county, to circuit court.*

Under the act of April 11, 1873, creating the county of Lee, the county of Phillips ascertained and reported to the county court of Lee county the amount of the latter's portion of the debt of Phillips county to be paid by Lee county, as provided by the act. Said county court, upon its own examination, allowed by order on its record a much smaller amount, and Phillips county appealed to the circuit court. There Lee county demurred to the "action or complaint" as insufficient in law, etc., etc., and the circuit court sustained the demurrer and dismissed the appeal. *Held:* That the proceedings were not in the nature of a suit to enforce an obligation resting on contract, but were in pursuance of legislative directions to adjust the fiscal arrangements between the old and new counties; that the action of Lee county court was subject to appeal, and by it the whole cause was transferred to the circuit court to be tried *de novo*, and final judgment rendered, just as if brought there in the first instance.

APPEAL from *Lee* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Sanders-Brown*, for appellant.

EAKIN, J.    By act of April 11, 1873, the general assembly created the county of Lee, out of territory taken from the county of Phillips and other counties.

Phillips County vs. Lee County.

By section 6, of the act, it was made the duty of the board of supervisors of the several counties out of which the county of Lee was taken, "to ascertain the exact amount of the indebtedness of each county at the date of the passage of this act, and to ascertain what portion of said debt would fall to the inhabitants of each county, now included in the county of Lee, making said estimates from the assessment lists filed by the assessors of and for the year 1872; which amount and apportionment of indebtedness, with a copy of all records and proceedings therein, shall be transmitted by the clerk of said board to the clerk of the board of supervisors of Lee county, who shall lay the same before the board of supervisors of said county at its next session thereafter, and, *if found correct by said board*, the same shall be entered of record in the record and proceedings of the board of supervisors of said county; and the same shall thenceforward *become and be the debt* of Lee county, to be paid by the inhabitants thereof and owners of property therein, *in such manner and at such times* as the said board of supervisors may determine."

On the fifteenth of September, 1873, the board of Phillips county, acting upon the report of its clerk, who had been appointed to ascertain the facts, declared the indebtedness of the county, on the seventeenth of April, 1873, to be as follows:

On railroad bonds issued to the Arkansas Central
   Railway Co.............................................$100,000
Iron Mountain and Helena Railway Co............... 100,000
Unpaid interest to that date........................... 6,000

   Total railroad debt......................................$206,000
Floating or scrip debt................................... 33,758
Old bonded scrip, due and unpaid..................... 15,000

   In all .....................................................$254,758

It ascertained further, that the valuation of real and personal property, taken off by the formation of Lee, was 23⅔ per cent. of the whole valuation of the county, which per centage of the indebtedness above found would make:

Of railroad debt............... ...........................$48,753 32
Floating or scrip debt............…..............…...…...... 11,559 38

Total...........................................…...................$60,312 70

All of which estimates were made on the assessment lists filed by the assessor of and for the year 1872 ; and it was further ordered that the clerk should make a certified copy of the order, and transmit it to the clerk of the board of Lee county.    This was done.

Upon receiving it, the board of Lee county suspended action for investigation, and appointed its own agent to that end.    On the thirteenth of October, 1873, he reported, as the result of his examination, that the per centage assigned to Lee county was, by a very trifling amount, too large ; but that the county of Lee had gained in other respects, in matters which had been left out of the estimate, more, by a very considerable amount, than would compensate her for the overcharge by way of per centage.    As to the railroad debt, he says he did not examine it, but sets forth the claim of Phillips county with regard thereto, as stated above.

Upon this report the board of Lee county, in June, 1874, ordered and adjudged " that the actual amount of said indebtedness is the sum of $12,959.39, arising from the old scrip debt, *and interest on railroad bonds,* which said amount of debt is ordered to be made a part of the records of this board."

It is apparent that the board adopted the per centage of 23⅔ per cent. as its share of the scrip and floating debt of

Phillips, augmented by the interest accrued on the railroad bonds, but meant to decline assuming any responsibility or burden with regard to the principal of said bonds.

The county of Phillips appealed to the circuit court.

There, Lee county appeared and demurred, because the case, as presented, showed no right of action, or claim, on the part of Phillips county, nor liability on the part of Lee, either separately, or jointly, with Phillips county, which it has not discharged, and because, generally, the " action, or complaint," was wholly insufficient in law.

The circuit judge sustained the demurrer, and dismissed the appeal—from which judgment, the county of Phillips appealed to this court. All the proceedings until the submission of the cause on the demurrer, were had under the constitution of 1868. The final judgment was not entered, however, until after the adoption of the constitution of 1874.

The proceedings are not of the nature of a suit or action by Phillips against Lee county to enforce an obligation resting on contract. They were had in pursuance of legislative directions, for the purpose of so adjusting the fiscal arrangements of the new, and several old counties, as to save the rights of citizens and creditors, and make the change in the political organization of the territory concerned, harmonize with them, as far as might be possible. The legislature had full power to make this adjustment of the burdens, and to impose on the new county of Lee all it attempted, with or without its consent. This power of the legislature over its subordinate political corporations, and governmental agencies, has been heretofore discussed and fully recognized by this court.

The action of the Lee county board was subject to appeal, and the appeal was properly taken by the county of

Phillips (*Gantt's Digest*, *705–6*, *1191*). The whole cause was thereby transferred to the circuit court, to be heard *de novo*, and it became the duty of the latter court to retain it for final judgment, just as if brought there in the first instance. *Ib.*, *sec. 1195*. There was nothing wrong in the appeal itself, and the court erred in dismissing it. If no cause of action had been sustained upon the papers brought up, nor made out by the evidence before the circuit court, it should simply have declared that there was no indebtedness on the part of Phillips county, which should become the debt of Lee, to be paid by the inhabitants, and property owners, and should have adjudged the costs against Phillips, but not dismiss the appeal.

The demurrer should have been overruled. The appeal brought up the whole case, as well what had been allowed by the board of supervisors, as what had been denied. The statement of the Phillips county debt was prepared and presented to the Lee county board, properly and in accordance with the directions of the statute. The floating debt was not denied, nor the accrued interest on railroad bonds. There was certainly something which justified, and sustained the application—something which Lee county should enter of record as its own debt. The contest was simply one of amount, and the *whole* case was brought up. Even if it were conceded that Phillips county had got all that she ought to have by the action of the Lee county board, and was entitled to no more, and should take nothing by the appeal, there would be no ground of demurrer. The court should still have retained the cause and rendered the proper judgment—fixing the amount of the indebtedness, to be certified to the board of Lee county, to be entered of record, and this course must still be pursued.

The question really in controversy will arise again on

remanding the cause. It results from what we have said above, that the amount of the burden to be assumed by Lee, and its nature, depends entirely upon the act creating the county, without any regard to contract, or of privity between the new county and the old creditors. The act, in terms, includes *all* the indebtedness of the old counties. Outstanding bonds not yet matured are debts, and the courts can make no exceptions. It is imperative on Lee county to admit so much of the bonded debt of Phillips, and in such proportion, as it may find to be correct; to enter it of record in its proceedings, to be and become the debt of Lee. It does not follow that it must be immediately paid or provided for. That may not be necessary, nor prudent. It is sufficient at present that it be ascertained and entered of record, to be paid " at such times " as the county court (which has succeeded the board) may determine.

The legislature doubtless intended this, and thought it equitable. The railroad debt was contracted with a view to enhance the property, and subserve the convenience of all the citizens of the county, and in the just expectation that such enhanced property would supply the means of paying the debt. The advantages, whatever they may be, remain attached to the same property and inhabitants after it has been transferred to Lee, and it is just that the new county, which enjoys the advantages, and has *pro tanto* deprived the county of Phillips of its resources, should bear its proportion of the burden. What becomes of the stock for which the subscriptions were made, it is not our province to inquire. If it is all retained by Phillips county, and has any marketable value, it would seem unjust to compel Lee county to pay her proportion of the debt without acquiring a portion of the stock. If any injustice results from

this, it comes from legitimate legislative action, and is only remediable by the same authority.

For error in sustaining the demurrer, and dismissing the appeal, let the judgment be reversed, and the cause remanded to the circuit court of Lee county for further proceedings, consistent with this opinion.