DESHA COUNTY *v.* CHICOT COUNTY.

Opinion delivered December 24, 1904.

1.  COUNTY—SEGREGATION OF PART—APPORTIONMENT OF DEBT.—Where a portion of the territory of a county is detached therefrom by statute, and annexed to another county, such detached territory is under a moral obligation to pay its just equitable proportion of the parent county's debt existing at the time of the separation; and where the act segregating the territory is silent as to such payment, the Legislature has power to provide for enforcing it by a subsequent enactment.  (Page 394.)

2.  CLAIM AGAINST DETACHED TERRITORY—JURISDICTION.—A claim in favor of a county against territory formerly segregated from it, and attached to another county, for the payment of such territory's proportion of the parent county's debt existing at the time of the segregation is not a demand or claim against a county, of which the county court would have exclusive jurisdiction, but is a liability imposed by statute upon territory detached from a county, of which it was competent for the Legislature to give jurisdiction to courts of chancery.  (Page 395.)

3.  COUNTY—DETACHMENT OF PART—APPORTIONMENT OF COSTS.—Where costs, attorneys' fees and other expenses were incurred by a county in litigation over the validity of indebtedness, which was finally compromised, territory which was detached from such county after the indebtedness was created, but before the costs and expenses were incurred, will be liable for its *pro rata* of such costs and expenses, under statutes providing that such detached territory shall be liable for its proportion of the parent county's indebtedness existing at the time such territory was detached.  (Page 396.)

4.  CLAIM AGAINST DETACHED TERRITORY—LIMITATION.—An action against territory detached from a county to enforce a liability for such territory's proportion of the indebtedness of the parent county existing at the time of the segregation was not barred by lapse of time before the Legislature provided a method by which such liability could be enforced.  (Page 396.)

5.  TAX LEVY—LIMIT.—So much of the act of April 10, 1899, as provides that the chancery court of Chicot County shall have power to enforce the collection of its decree against the territory detached from that county and annexed to Desha County by causing the levying court of the latter county annually to levy such rate of taxation, not exceeding 2 per cent., as will pay one-twentieth of the decree, interest and costs, is unconstitutional in so far as it authorizes the

annual levy and collection of an amount in excess of the five mills authorized by Constitution 1874, art. 16, § 9, to be levied "to pay indebtedness existing at the time of the ratification" of that Constitution. (Page 397.)

6. CONSTITUTION—EXISTING INDEBTEDNESS.—New bonds issued since the adoption of the Constitution of 1874 to pay indebtedness created before that date stand in lieu of the original indebtedness, within the meaning of Constitution 1874, art 16, § 9. (Page 398.)

7. INDEBTEDNESS OF DETACHED TERRITORY—LIEN.—In a suit to enforce upon territory detached from a county, and attached to a newly created county, its share of the parent county's existing indebtedness, so much of the decree of the chancery court as authorized any holder of the bonds which the newly created county might issue to pay the indebtedness apportioned to the territory detached from the parent county, in case of default thereon, to institute proceedings for the foreclosure of a lien on the lands of the detached territory was erroneous and void. (Page 399.)

Appeal from Chicot Chancery Court.

MARCUS L. HAWKINS, Judge.

Decree modified.

*X. J. Pindall* and *F. M. Rogers,* for appellant.

Exclusive original jurisdiction of this suit is vested in the county court. 44 Ark. 225; 47 Ark. 80; Const., art. 7, § 28.

*Baldy Vinson,* for appellee.

Limitation does not run while there is no one capable of suing. 48 Ark. 386; 42 Ark. 491; 38 Ark. 243; 16 Am. Dec. 290; 94 N. C. 231; 84 Tenn. 697; 76 Wis. 598; 37 Pac. 349; 26 Kan. 181; 93 Ky. 33; 42 Ark. 54; 33 Ark. 690. The act of 1899 does not violate section 28, article 7, of the Constitution. 52 Ark. 430; 58 Tex. 321; 148 U. S. 228; 51 Ark. 344; 120 U. S. 517; 33 Ark. 690. The detached territory is liable to Chicot County on the compromise bonds to the amount found by the masters. 92 U. S. 307; 54 Ala. 639; 33 Ark. 497; 52 Ark. 430; 35 Md. 201; 16 Mass. 76; 58 Miss. 619; 95 N. C. 189; 14 Ore. 525; 69 Tex. 177; 18 Fla. 512. The cost of suit was properly placed. 18 Ark. 202; 19 Ark. 148; 36 Ark. 333.

*F. M. Rogers,* for appellant in reply.

A county cannot be sued alone in any other State court, except one which sits within its own borders. 44 Ark. 229; 36 Ark. 378. The debt, being barred prior to the passage of the act of 1899, is not revived by it. 20 Am. Rep. 131; Cooley, Const. Lim. 448; Cooley, Tax. (2d Ed.) 690.

BATTLE, J. By an act entitled "An act to change the boundary line between the counties of Chicot and Desha," approved February 10, 1879, certain portions of Chicot County were detached and added to Desha County. No part of the indebtedness of Chicot County was apportioned to Desha or to the territory attached. Afterward, by an act entitled "An act to adjust the indebtedness of Chicot County, existing on the 1st day of July, 1879, and apportion the same between said county of Chicot and that part of said county cut off from said county of Chicot, and added to the county of Desha, by 'An act entitled an act to change the boundary line between the counties of Chicot and Desha,' approved February 10, 1879, and for other purposes," approved March 19, 1881, provision was made for ascertaining the acknowledged indebtedness of Chicot County on the 10th day of February, 1879, remaining unpaid, and to apportion the same between the county of Chicot and the part thereof added to the county of Desha, and for the enforcement of the collection and payment of the same out of the territory so detached. In the preamble of the latter act is the following recital: "Whereas, there is, and was at the time of the passage of said act, litigation pending to enforce upon the county of Chicot a liability for certain bonds heretofore issued to certain railroads by the county of Chicot, which liability was at the time, and still is, denied by the county of Chicot, but which, if finally decided to be a valid indebtedness against the county of Chicot, and payment thereof enforced against said county, should be borne by said county of Chicot, and the part so cut off and added to Desha County, in proportion to the value of the taxable property of said county of Chicot and the part so cut off."

And as to indebtedness mentioned in such recital the act provided as follows:

"Sec. 2. That if it should be hereafter determined that the said county of Chicot is liable on the bonds issued to said railroads, or either of them, or for any scrip issued in lieu of certain bonds claimed by the representatives of Lloyd Tilghman, deceased, and now in suit, that part of the said county of Chicot so cut off and added to the county of Desha, by the provisions of the act aforesaid, shall pay and be held liable for its proportion of said indebtedness, according to the value of the taxable property of the portion so cut off, compared with the value of the taxable property of the remainder of the county of Chicot. And in case of disagreement the proportion, and all questions connected with the adjustment of the matter, to be decided by a board of arbitrators, to consist of the Governor, the Auditor and Treasurer of the State of Arkansas for the time being, and all expenses of defending the suits now pending, or prosecuting or defending any suits hereafter to be brought, either by or against the county of Chicot, for, or on account of, the indebtedness described in this section, to be apportioned between said county of Chicot and the part so cut off in like proportion. *Provided, however,* that nothing in this act shall be construed as ratifying or in any manner recognizing the validity of said indebtedness, or any part thereof."

Further provision was made by the General Assembly for the adjustment and apportionment of the disputed indebtedness of Chicot by an act entitled, "An act to provide a mode of settlement of certain indebtedness due from Desha County to the county of Chicot," approved April 10, 1899. The preamble of the act is as follows:

"Whereas, By an act approved February 10, 1879, certain parts of Chicot County were detached from said county of Chicot and attached to said county of Desha, without providing for a settlement of the then existing indebtedness of the said county of Chicot; and,

"Whereas, By an act approved March 19, 1881, it was recognized that that part of Chicot County so detached from said county of Chicot and attached to said county of Desha should bear its proportion of the existing indebtedness of Chicot County existing on February 10, 1879; and,

"Whereas, Under the provisions of said act approved March 19, 1881, the clerk of Chicot County and James Murphy, as the

commissioner from Desha County, did meet, ascertain and adjust so much of said indebtedness as could then be adjusted; and,

"Whereas, The indebtedness of said county of Chicot represented by bonds issued under the act approved July 23, 1868, to the Mississippi River, Ouachita & Red River Railroad Company and Little Rock, Pine Bluff & New Orleans Railroad Company, was at the time of said adjustment of said indebtedness then in dispute and being contested in the courts of the United States, and was for that reason, as provided in said act, approved March 19, 1881, not included by said commissioners in said adjustment; and,

"Whereas, The Supreme Court of the United States has, in two separate actions, affirmed and declared the validity of said bonds; and,

"Whereas, The said county of Chicot has compromised the said indebtedness represented by said bonds so issued at fifty-five (55) per cent. on principal and interest and costs of litigation, by issuing bonds for said amount running from the 1st day of July, 1889, to the 1st day of July, 1909, and bearing interest at the rate of five (5) per cent. per annum till paid; and,

"Whereas, The said act of March 19, 1881, recognized the justness upon condition of that part of Desha County so detached from Chicot County bearing its proportion of said bonded indebtedness, but the mode of ascertaining the said proportion and the manner of enforcing the same when ascertained is not as expeditious as is desired; and,

"Whereas, The said contingency has happened, and said bonds have been declared a valid indebtedness against Chicot County."

Sections 1, 2, 3, and part of 4 of said act are as follows:

"Section 1. That the said county of Chicot shall have the right at any time within the next five (5) years after the passage of this act to institute its action in the chancery court of Chicot County against the said county of Desha, to ascertain, adjust, and declare the proper amount of said bonded indebtedness that should be borne by that part of Desha County so detached from said county of Chicot.

"Sec. 2. That the said chancery court of the said county of Chicot shall have, and the same is hereby invested with, jurisdiction of the said cause, which shall run in the name of the State

of Arkansas on relation of Chicot County against Desha County, and service of process shall be made and had on the county judge of the said county of Desha.

"Sec. 3. That the said chancery court of Chicot County in the conduct and hearing of the said cause shall be governed by the rules and procedure of the chancery courts of the State of Arkansas, and shall render such decree against the said county of Desha for so much of said compromise indebtedness and the expense attending the said compromise as shall be found just and proper, as shown by the pleadings and evidence in said cause, and such decree shall be certified to the county courts of the said counties of Desha and Chicot.

"Sec. 4. That any decree rendered by the said chancery court in said cause shall bear interest at five (5) per cent. per annum from date till paid; and the said chancery court shall have power to enforce the collection of said decree by causing the levying or quorum court of said Desha County to annually levy such rate of taxation, not exceeding two (2) per cent., as will pay one-twentieth of decree and interest thereon and expenses of collection, and such levy shall be extended by the clerk of said county of Desha, and collected by the collector of said county of Desha, on and from the territory of said Desha County so detached from said Chicot County; such collection of said taxes to be made in currency of the United States, or in warrants of said county of Chicot."

On the 10th day of August, 1899, the State of Arkansas on the relation of Chicot County instituted a suit against Desha County pursuant to the act of April 10, 1899, and alleged in its complaint as follows: On the 23d of March, 1872, "Chicot County, under authority of the act of July 23, 1868, executed and delivered on stock subscriptions to the Mississippi, Ouachita & Red River Railroad Company 200 bonds for $500 each, due on January 1, 1887, with coupons attached representing 6 per cent. per annum interest, payable semi-annually; and 200 bonds to the Little Rock, Pine Bluff & New Orleans Railroad Company, due January 1, 1892, with coupons attached representing 6 per cent. per annum interest, payable semi-annually."

"That the said bonded indebtedness was a charge on the said territory so annexed to Desha County in equal proportion as it was a charge on the remaining territory of Chicot County; that,

since the detaching of said territory, the county of Chicot has paid various sums of interest on said bonds; * * * that it has also paid in and about said bonded indebtedness in litigation over the validity of said bonds, compromising the same, trustees' and attorneys' fees, about the sum of $25,000."

"On July 1, 1889, under authority of act of April 7, 1887, Chicot County compromised about 90 per cent. of the bonded indebtedness at 55 cents on the dollar, and executed and delivered to the First National Bank of Little Rock, as trustee, for delivery to the holders of the old bonds who should deliver the old ones to the bank in escrow, 480 of the compromise bonds for $500 each, and 200 for $100 each, due July 1, 1909, with coupons attached representing interest at 4 per cent. to July 1, 1894, and 5 per cent. from that date to maturity, and that the bank delivered to all holders of original bonds, who delivered originals, as per compromise."

Chicot County has annually paid the interest on the compromise bonds, amounting in the aggregate to about $130,000. There is now due on so much of the original indebtedness as was not compromised about $90,000, which, with the compromised indebtedness, makes the total indebtedness of Chicot County on which interest has been paid according to compromise $350,000.

Plaintiff asked "that masters be appointed to ascertain the amounts due on the original bonds, which have not been compromised; the amount now existing on the compromise bonds; the amount of interest paid by Chicot on original and compromise bonds; the costs of litigation and expenses incident to the indebtedness; the *pro rata* which should be borne by the detached territory, and for further orders thereon as provided by the act of April 10, 1899."

The defendant answered, and denied that the detached territory was liable for any part of the indebtedness of Chicot; that plaintiff had paid any part of said indebtedness or any interest thereon; alleged that claim was stale, and that it was barred by the five and seven years statutes of limitation.

Masters were appointed to ascertain and report the amount of the indebtedness of Chicot County on the "railroad bonded indebtedness mentioned in the complaint at the date of the compromise, on July 1, 1899;" the amount of the indebtedness paid

by Chicot at said date; the costs, attorneys' fees, and other expenses paid by it on account of the litigation over the validity of said indebtedness; the total "tax valuation" of the personal and real property in the territory annexed to Desha County for the year 1879; the total "tax valuation" of the personal and real property in the remaining territory of Chicot County for the year 1879; and the value of the property of the whole county at the time of the annexation. They did so, and their report, after being corrected, was approved.

The court, after hearing the cause, found "that there is due from the detached territory the sum of $24,984.80 on bonded indebtedness, and $17,938.35 for judgment and interest paid on bonded debt, court costs and attorneys' fees and other expenses incurred and paid by Chicot County in lawful currency of the United States in and about the said bonded indebtedness as shown by the master's report, making a total of $42,923.15;" and rendered a decree in accordance with the act of April 10, 1899, except that it ordered and decreed that if the bonds and coupons, which Desha County may issue to pay off said decree according to said act, shall not be "promptly paid as the same mature, any holder or holders of such bond or coupons shall have the right to present the same to" the Chicot Chancery Court, "with his petition for foreclosure" of the lien of such bonds and interest coupons on all that part of Desha County detached from the county of Chicot; and that thereupon "the said lien may be foreclosed, as other liens are foreclosed, under the rules of practice of the chancery courts of this State; and the said property, or so much thereof as may be necessary, shall be sold for the satisfaction of the indebtedness due at the time of such foreclosure;" and ordered and decreed that Desha County pay 90 per cent. of all the costs of this suit; and the defendant appealed.

It has been repeatedly held by this court that "a county, by receiving territory detached by an act of the General Assembly from that of another county, is placed under a moral obligation to pay a just and equitable proportion of the latter's debt existing at the time the act is passed; and where the act segregating the territory is silent as to such payment, the Legislature has power to provide for enforcing it by a subsequent enactment." *Perry County* v. *Conway County,* 52 Ark. 430; *Eagle* v. *Beard,* 33 Ark.

497; *Phillips County* v. *Lee County,* 34 Ark. 240; *Monroe County* v. *Lee County,* 36 Ark. 378.

But in the case before us the Legislature has made the territory annexed liable. The moral obligation of such territory is greater than that of the county to which it is attached. Upon the faith and credit of it, in part, the indebtedness contracted before it was detached was created. It is just and right that it should be made liable for its part of the debts. Such, in effect, was the holding in *Carter County* v. *Sinton,* 120 U. S. 517. In that case "Carter County, in Kentucky, under legislative authority subscribed to the capital stock of a railroad company, and issued its negotiable coupon bonds in payment of the subscription. Subsequently Boyd and Elliott counties were created, in each of which were included townships which formed part of Carter County when the subscription was made and the bonds issued, and in each case legislative provision was made for the continuation of the liability of the persons and property set off to the new counties on the subscription. Default being made in the payment of the interest, an act was passed in 1878 authorizing the county court of Carter County to compromise and settle with the holders of the bonds on behalf of Carter County, and on behalf of the parts of the other counties taken from Carter County, and a compromise was made under which new bonds of Carter County and of those parts of each of the other counties taken from Carter County were issued. Default being made in the payment of interest due on these latter bonds, a holder of the coupons brought suit against Carter County to recover on them." It was held "that the Legislature had authority under the constitution of Kentucky to authorize the county court of Carter County to bind those parts of the counties of Boyd and Elliott taken from Carter County; that under the act of 1878 the county court of Carter County was authorized to contract for the issue of negotiable bonds of the county and of the parts of the county in order to retire the old negotiable bonds of the county; that in the suit to recover upon the coupons of the new bonds it was not necessary to make the parts of Boyd and Elliott counties which had been parts of Carter County parties to the suit."

Appellant contends that the county court of Desha County has exclusive jurisdiction of the subject-matter of this suit. Why

has it? It was not a demand or claim against that county. It was a liability imposed by act of the Legislature upon territory detached from Chicot County. It was competent for the Legislature to apportion the indebtedness of Chicot County existing at the time the territory was detached as it deemed proper. In one case it has authorized the county court of the county to which the territory was added to apportion the indebtedness; and this power was sustained in *Perry County* v. *Conway County*, 52 Ark. 430. In another case it provided that the indebtedness should be apportioned by persons appointed for that purpose by the board of supervisors of the counties from which the territory was taken and by the board of supervisors of the county to which it was annexed; and this power was upheld in *Eagle* v. *Beard*, 33 Ark. 487. And in another case by the board of supervisors of the county from which the territory was taken and of the county to which it was annexed; and this was approved in *Phillips County* v. *Lee County*, 34 Ark. 240. So it has been held to be within the power of the Legislature to provide for the apportionment of the indebtedness in any manner it deemed proper. *Forest County* v. *Langdale*, 76 Wis. 605. The means provided in this case were eminently appropriate.

Appellant complains of so much of the decree as makes the annexed territory liable for the costs, attorneys' fees, and other expenses incurred by Chicot County on account of the litigation over the validity of the indebtedness created by the issue of bonds to railroad companies. It says this was a new debt, for which the Legislature could not make the annexed territory liable. These costs, attorneys' fees, and expenses were created for the benefit and on account of the whole territory of Chicot as it was before any part was detached; and the territory annexed to Desha ought morally to pay its proportion thereof. It received the benefit of the compromise of said indebtedness, and should bear its proportion of the costs and expenses which led to the compromise; and it was within the power of the Legislature to provide for the enforcement of the moral obligations as it did in the act of March 19, 1881, section 2, and the act of April 10, 1899. *Carter County* v. *Sinton*, 120 U. S. 517.

This suit was not barred by the statutes of limitation. The right of action did not accrue until there was some one to sue.

Under the acts of the Legislature the detached territory in Chicot County was solely liable; and it could not be reached by an action to enforce its liability for its proportion of the indebtedness in question in this suit until the passage of the act of April 10, 1899. *Glass* v. *Williams*, 16 Lea, 697.

The act of April 10, 1899, provides that the chancery court of Chicot County shall have the power to enforce the collection of its decree as to the indebtedness created by the issue of bonds to the railroad companies by causing the levying or quorum court of Desha County to annually levy such rate of taxation, not exceeding two (2) per cent., as will pay one-twentieth of decree and interest thereon and expenses of collection, and the court ordered the levying or quorum court of Desha County to make such levy. Is this part of the act of April 10, 1899, and the decree constitutional?

The act of July 23, 1868, under which the bonds to the railroad companies were issued, provided that "the county court shall provide by assessment upon the taxable property of the county for the prompt and punctual payment of the interest on the bonds as it shall become due, which assessment or tax shall be collected as other taxes; and it shall also provide a sinking fund consisting of the dividends upon said stock and such other incomes, revenues and taxes as shall be deemed appropriate and sufficient for the payment of the bonds at maturity." The act entitled "An act regulating the assessment and collection of the revenue of the State of Arkansas," approved March 25, 1871, provides: "It shall be unlawful for the county court of any county of the State, unless especially and expressly authorized by some act of the General Assembly, to levy on the taxable property of such county in any one year a greater rate per centum than is hereinafter authorized, viz: * * * for the payment of the interest on any railroad bond issued by such county, as may fall due with the then current or next succeeding year, such amount as may be actually necessary, not exceeding five mills on the dollar." Section 147. And the same act further provides: "The competent authorities of any county * * * may, at any time within five years next before the principal of such bonds or other securities shall be payable, if the market price of the stock of such railroad company be less than 75 per cent. on the par value, levy or cause to be levied annually on the taxable property of such county * * *

such tax, not exceeding one mill on the dollar, as will be suffi-
cient to balance the discount on the railroad stock held by such
county  *  *  *  by the time such bonds may become due; and
the proceeds of all such taxes shall be invested in the purchase
of the bonds issued by such county,  *  *  *  or in other safe
and productive securities, and shall be applied to the payment
of bonds reissued, and to no other use or purpose whatever."
Section 145.

Such were the provisions made for the payment of the
interest on bonds issued under the act of July 23, 1868, in aid
of railroads, at the time the bonds were issued by Chicot County
to the railroad companies, and for a sinking fund for the pay-
ment thereof.  The holders of the bonds of Chicot County could
not claim a right to the levy of any greater rate of taxes, under
the laws in force at the time such bonds were issued, than was
provided by the act of March 25, 1871.  They were not entitled,
under such laws and their contract with the county, to the levy
of any particular rate, but the rate to be levied was left to the
discretion of the county court, not exceeding one mill on the
dollar for the payment of interest.

The Constitution of this State, adopted in 1874, limits this
tax, and provides:  "No county shall levy a tax to exceed one-half
of one per cent. for all purposes; but may levy an additional one-
half of one per cent. to pay indebtedness existing at the time of
the ratification of this constitution."  Art. 16, § 9.  As the holders
of the bonds were not entitled to the levy of any particular tax,
it did not impair their contract with Chicot County.  The rate
of the tax therefore that can be levied to pay the indebted-
ness evidenced by the bonds cannot exceed one-half of one per
cent.

Was the indebtedness evidenced by the bonds issued in com-
promise and in lieu of the bonds issued by Chicot County to the
railroad companies an indebtedness at the ratification of the con-
stitution of 1874,  They were issued under an act entitled "An
act to authorize the several counties of this State to issue bonds
to take up their indebtedness existing prior to the adoption of
the Constitution of 1874," approved April 7, 1887.  Acts 1887, p.
276.  Section 3 of that act provides that a holder of any of the
bonds issued under it, or the assignee or transferee thereof, shall
have the same rights to the levy and collection of taxes to pay

the same that he or they had or might have, as a holder of the original indebtedness "upon which said new bond or bonds was issued." The new bonds stand for the same indebtedness the original bonds represented, and that was an indebtedness which existed prior to the adoption of the Constitution of 1874. *Montgomery County* v. *Menefee County,* 93 Ky. 33.

The act of April 10, 1899, is unconstitutional as to so much thereof as authorizes the levy of a tax in excess of five mills on the dollar. It authorizes a levy of a tax not exceeding two per centum to pay the indebtedness apportioned to the territory detached from Chicot and added to Desha County. In so doing it authorizes the levy of five mills on the dollar, and as to so much thereof it is valid. Under it a tax not exceeding five mills on the dollar may be levied to pay the part of the indebtedness so apportioned; and the Chicot Chancery Court has the power to enforce the collection of its decree by "causing the levying or quorum court of said Desha County to annually levy" a "rate of taxation not exceeding five mills on the dollar on the taxable property in the territory detached from Chicot County, to pay such indebtedness."

So much of the decree of the chancery court as authorizes any holder of the bonds that the county of Desha may issue to pay the indebtedness apportioned to the territory detached from Chicot to institute proceedings for the foreclosure of lien to pay such bonds should be set aside.

Desha County should be required to pay only one-half the costs incurred in this suit in the chancery court.

The decree of the chancery court should be modified to conform to this opinion; and it is so ordered. The cause is remanded with instructions to the court to so modify it.