# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

UNITED STATES ex rel. FISHER et al. v. BOARD OF DIRECTORS OF
PUBLIC SCHOOLS, PARISH OF ORLEANS.*

(Circuit Court of Appeals, Fifth Circuit. January 25, 1916.)

No. 2824.

1. EXECUTION ☞99—"PLURIES FI. FA."

A writ of "pluries fi. fa." is a writ issued where other commands of
the court have proved ineffectual.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 195-202, 607;
Dec. Dig. ☞99.]

2. MANDAMUS ☞1—NATURE AND SCOPE OF REMEDY.

Mandamus was originally. under the English law, a high prerogative
writ in the name of the king, and issued from the King's Bench, directed
to persons, corporations, and inferior courts, ordering them to do a spe-
cific act within the duty of their office. The writ is either peremptory
or alternative, according as it requires the defendant absolutely to obey
its behest or gives him an opportunity to show cause to the contrary.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 1-3; Dec.
Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series,
Mandamus.]

3. SCHOOLS AND SCHOOL DISTRICTS ☞94—INDEBTEDNESS—STATUTORY PRO-
VISIONS.

Act La. No. 214 of 1912 constitutes the school board of the parish of
Orleans a body corporate under the name of the board of directors of
the public schools, parish of Orleans. Section 68 requires school boards
throughout the state to adopt a budget of revenues annually, and a
budget of expenditures, which, in the parish of Orleans, shall not ex-
ceed 95 per cent. of the budget of revenues, and provides that in that
parish, at the end of the year, after payment of all the indebtedness
budgeted, the school board shall apply the surplus of 5 per cent. to any
indebtedness of previous years reduced to final judgments, liquidating
and fixing the amount of indebtedness, whether the judgments be abso-
lute or limited to the revenues of any year. *Held*, that this applies to a
judgment recovered against the predecessor of such board, known as the
board of directors of the city schools of New Orleans; there being but one
school board, and the identity of a municipal corporation not being de-
stroyed by a change of name.

[Ed. Note.—For other cases, see Schools and School Districts, Cent.
Dig. § 217; Dec. Dig. ☞94.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**229 F.—1** *Rehearing denied February 21, 1916.

**2**                         229 FEDERAL REPORTER

4. MANDAMUS ⟨⟩143—PROCEEDINGS TO PROCURE WRIT—TIME FOR APPLICATION.

A writ of mandamus to require a school board to comply with Act La. No. 214 of 1912, § 68, as to applying 5 per cent. of the budget of revenues to the payment of judgments, will not be denied on the ground that the application was filed too late for the year 1914 and too early for the year 1915, especially where the school board asserts that the statute is unconstitutional and void, thereby indicating a purpose not to comply with it at all, as, under the prayer for general relief, the court may so frame its order as to make it relate to subsequent budgets, in order to carry out the purpose of the Legislature and enforce the right of the relators.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 282–285; Dec. Dig. ⟨⟩143.]

5. MANDAMUS ⟨⟩111—SUBJECTS OF RELIEF—PAYMENT OF JUDGMENTS.

A court has jurisdiction by mandamus to compel a school board to obey Act La. No. 214 of 1912, § 68, requiring its budget of expenditures not to exceed 95 per cent. of its budget of revenues, and requiring the surplus of 5 per cent. to be applied to the payment of judgments.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 231, 232, 234; Dec. Dig. ⟨⟩111.]

6. MANDAMUS ⟨⟩111—SUBJECTS OF RELIEF—PAYMENT OF JUDGMENTS.

Mandamus to compel a school board to obey Act La. No. 214 of 1912, § 68, will not be denied because of the financial inability of the school board to pay its debts and the necessity to borrow each year a large amount of money to maintain the schools, in view of the mandatory provisions of the statute that the budget of expenditures "shall" not exceed 95 per cent. of the budget of revenues and that the board "shall" apply the surplus of 5 per cent. to indebtedness of previous years reduced to final judgment.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 231, 232, 234; Dec. Dig. ⟨⟩111.]

7. SCHOOLS AND SCHOOL DISTRICTS ⟨⟩94—INDEBTEDNESS—STATUTORY PROVISIONS.

Act La. No. 214 of 1912, § 71, authorizing the school board of the parish of Orleans to pledge its revenues for the current year for the purpose of promptly paying its obligations, or for such other purposes as to it may seem proper, must be construed in connection with section 68, requiring that 5 per cent. of the revenues be applied to the payment of any indebtedness of previous years reduced to judgment, and, as so construed, authorizes merely the pledging of 95 per cent. of the revenues.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 217; Dec. Dig. ⟨⟩94.]

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Mandamus by the United States, on the relation of William G. Fisher and others, against the Board of Directors of the Public Schools, Parish of Orleans. The writ was denied, and the relators bring error. Reversed.

Charles Louque, of New Orleans, La., for plaintiffs in error.

I. D. Moore, City Atty., and John F. C. Waldo, Asst. City Atty., both of New Orleans, La., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SPEER, District Judge. In 1892, Mrs. M. M. Fisher and her husband, citizens of Spain, recovered a judgment against the board of directors of the city schools of New Orleans, for the sum of $8,097.17, with legal interest from May 22, 1890. This was in the Circuit Court of the United States for the Eastern District of Louisiana. It was based upon a judgment on the same right of action which had been previously rendered in favor of the plaintiff in the state court, and against the board of directors of the city schools of New Orleans. The judgment was for salary due to the plaintiff for work actually done as school teacher of the public schools of New Orleans, and for the salaries of other teachers, whose claims were transferred to the petitioner. The judgment was based on the verdict of the jury. This judgment, on proper process, was revived on December 1, 1902. This was also in the then Circuit Court for the Eastern District of Louisiana, the Honorable Charles Parlange, District Judge, presiding. The judgment of revival was likewise based on the verdict of a jury. Execution was issued on October 28, 1904, to collect the amount of the judgment, with interest and costs, and the return of the marshal indicated that the president of the board of school directors stated that he had no funds with which to pay the writ, nor did he know of any property upon which a levy could be made. The marshal's return also showed that he made a demand on Patrick McGraw, treasurer of the city of New Orleans, and ex officio treasurer of the school board.

[1] It also appears by a writ of pluries fi. fa., which is a writ issued where other commands of the court have proved ineffectual (3 Blackstone, Comm. 283; Archibald's Practice, 585), the marshal attempted to seize all the assets in the hands of the treasurer belonging to the board of school directors. By order of court granted on a supplemental petition, in the general nature of a garnishment proceeding, interrogatories were propounded to the city treasurer to ascertain and make available for the payment of the judgment the assets in his hands. Of school taxes, the treasurer reported that he had $633.63. This he was ordered by Judge Parlange to pay over to the plaintiff. The date of the order is November 19, 1904. On March 10, 1913, the original plaintiff having departed this life, the relators before the court, who are alleged to be the lawful heirs of Mrs. Fisher, the original plaintiff, again filed an application to revive the original judgment. This proceeded regularly, and was again submitted to a jury, which rendered this verdict:

"We, the jury, find a verdict in favor of the plaintiff, reviving the judgment as prayed for, subject to credit for amounts already paid. December 8, 1914."

Pursuant to the verdict of the jury, the judgment, which had been revived in the Circuit Court of the United States as hereinbefore stated in 1902, in favor of Mrs. M. M. Fisher and her husband, against the board of directors of the city schools of New Orleans, for the sum of $8,097.17, with 5 per cent. interest per annum from May 22, 1890, and costs, was by the District Court, the Honorable Rufus E. Foster, District Judge, presiding, revived as to the board of directors of the public schools, parish of Orleans, a new school board created by the Legis-

lature, with a different name, but with the same duties of the original defendant, and in favor of the plaintiffs, heirs at law of Mrs. Fisher, who are the relators in the proceeding before this court. This recovery, however, provided in the judgment of revival, was made payable out of the school taxes levied by the city of New Orleans prior to 1879. The judgment was rendered December 8, 1914, and was signed by the judge June 29, 1915. A motion for writ of error was filed by the board of directors of the public schools, parish of Orleans, July 21, 1915, with certain assignments of error. This writ of error from the judgment of revival last mentioned came on for hearing before this court at the present term, and the judgment of the District Court was affirmed. (Opinion not yet reported.)

While the application to revive the judgment was pending in the District Court, the relators, the heirs at law of Mrs. Fisher, on November 17, 1914, filed a petition in the District Court for mandamus. It is entitled "United States ex rel. Wm. G. Fisher et al. v. Board of Directors of the Public Schools, Parish of Orleans." With appropriate recitals with reference to the judgment, the issue of execution, and return of "no property" by the marshal, it further avers that in the year 1912 the Legislature of the state of Louisiana, under Act 214 of said session, created the board of directors of the public schools, parish of Orleans, and in section 68 of the act directed the board to prepare a budget of revenues every year, in the month of July, to accrue to the board during the ensuing year. It further provided that the budget should not include probable revenues arising from doubtful or contingent sources. The act further provided that, within 10 days from the adoption of the budget of revenues, the school board was directed to adopt a budget of expenditures not to exceed 95 per cent. of such budget of revenues. The petition avers that the 5 per cent. reserved of the budget of revenues was to be applied under the act of the indebtedness of relators, reduced to final judgment, and the right was given to relators to enforce this provision by such appropriate remedies as the law provides. It is averred, further, that the school board has refused to carry out the provisions of said law, and should be made to adopt their budget in conformity to said law; that relators are entitled to a writ of mandamus to compel the board to comply with the provisions of the act. It is prayed that the writ of mandamus issue, directing the board, and each of the members thereof, to adopt a budget of revenues and a budget of expenditures in the month of July each year, commencing in July, 1914, reserving 5 per cent. of the budget of revenues to be applied to the payment of the judgment obtained by relators against the board of directors of the public schools, parish of Orleans, or their predecessors. There is also, in this application, a prayer for general relief.

The Act of the General Assembly of 1912, No. 214, on which relators rely, is as follows:

"Sec. 68. Be it further enacted, etc., that it shall be the duty of the various school boards throughout the state, during the month of July of each year, to adopt a budget of revenues to accrue to said school board during the ensuing year; said budget not to include probable revenues arising from a doubtful or contingent source.

"(a) Be it further enacted, etc., that within ten days after the adoption of the budget of revenues, the school boards throughout the state shall adopt a budget of expenditures, not to exceed (100 per cent.) one hundred per cent. of the budget of revenues; in the parish of Orleans the budget of expenditures shall not exceed (95 per cent.) ninety-five per cent. of said budget of revenues.  *  *  *

"(b) Be it further enacted, etc., that in the parish of Orleans at the end of the year after payment of all the indebtedness budgeted, the school board shall apply said surplus of (5%) five per cent. to any indebtedness of previous years reduced to final judgments liquidating and fixing the amount of indebtedness, whether the judgments be absolute or limited to the revenues of any year.

*    *    *    *    *    *    *    *    *    *

"Sec. 72. Be it further enacted, etc., that all the provisions of this act shall be and are applicable to the parish of Orleans, to the schools situated therein, and to the board of directors of said parish unless the said parish of Orleans is especially excepted from the application of such provisions, and unless such provisions are in conflict, or incompatible with, or are contrary to the provisions of this act beginning with section 70 hereof.  In addition to the powers, duties and rights hereinbefore granted to and imposed upon parish boards, the powers, duties and rights of said board of directors of the public schools of the parish of Orleans shall be as follows:

*    *    *    *    *    *    *    *    *

"Second—It shall limit the annual expense of maintaining the schools to the annual revenue.  *  *  * "

Upon this application, the District Judge ordered the defendants to show cause why the alternative writ of mandamus should not issue, as prayed for.  In response to this order, the board of directors of the public schools, parish of Orleans, made its return.  It may be treated as an answer and contains the following:

Alleging that it was a body separate and independent of any other, it denied its responsibility for any debt of the pre-existing board; that the judgment hereinbefore referred to was against the directors of the public schools, parish of Orleans, and not against respondents; that if, however, it should be held that there is a privity or succession between the two boards, the judgment is barred by the prescription of ten years (this defense, as heretofore stated, was denied by the District Court, the denial affirmed by this court); that the application for mandamus came too late; that respondents had adopted and promulgated a budget of revenues to accrue during the year ending June 30, 1915, and the budget of expenditures for the same time, and that the fund was exhausted and appropriated: that the demand of relators had therefore become impossible of performance; that as to budgets for subsequent years the demand of the relators is premature; that the mandamus will not be granted without due demand at the proper time and refusal thereof, nor in anticipation of a defect of duty; that paragraph (b) of section 68 of Act 214 of the General Assembly of the state of Louisiana, session of 1912, providing that the school boards shall apply the surplus of 5 per cent. to any indebtedness of previous years, reduced to final judgments, refers exclusively to debts created by the respondents, and not to judgments rendered prior to the creation of the board; that the budget for the fiscal year ending June 30, 1915, fell short, by $411,972.96 of the debts for that year; that the act of the General Assembly, session of 1912, specifically declares that no portion of the revenues to accrue in any way shall go to pay the indebtedness of any previous year; that paragraph (b) of section 68 of said act of the General Assembly of 1912, is unconstitutional, null, and void, because in contravention of articles 227, 231, 235, 248, 252, 254, and 255 of the Constitution of the state of Louisiana, and the grounds of the alleged invalidity of the act are annexed; that all the revenues of the parish of Orleans for school purposes fail annually within the sum of $500,000 of being sufficient to maintain and operate the schools of the city, and they have been and can be operated annually by

borrowing the sum approximately $500,000 to make good the deficit, and this by pledging the entire revenues of the board for the year then current; that the exemption of the parish of Orleans from the operation of paragraph (a) of section 68 of the Act of the General Assembly 214 above specified, limiting the budget to not more than 95 per cent. of such revenues, and the entire paragraph (b) of said section, is unconstitutional, null, and void, as not being included in the title of the act, and the unconstitutionality is specially pleaded; and, finally, that by section 71 of that act, the respondent board was empowered for the purposes, as stated in the act, of promptly paying its obligations, or for such other purposes as said board may deem proper; and, furthermore, by paragraph (b) of the same section, restricts the payment of the 5 per cent. reserve to the eventuality, to quote from the act—"payment of all the indebtedness budgeted."

When the application for mandamus and return came on to be heard, the parties having filed a written stipulation waiving trial by jury, the cause was taken up by the court on the issues of fact as well as law. After hearing the case, the learned judge of the District Court rendered his opinion and denied the writ of mandamus. Motion for new trial was made and overruled; bill of exceptions was taken, on the ground that the conclusion of law arrived at by the court from the facts found by the judge was not legal and did not support the judgment, and by writ of error the issues were brought before this court.

[2] The purpose of the writ of mandamus is very well understood. It was originally, under English law, a high prerogative writ in the name of the king, and issued from the King's Bench, directed to persons, corporations, and inferior courts, ordering them to do a specific act within the duty of their office. It is stated, in Encyclopedia Brittanica, title "Mandamus":

"The writ has passed in the law of the United States. There is, in the federal judiciary, an employment of the writ substantially as the old prerogative writ in the King's Bench practice, also as a mode of exercising direct jurisdiction, also as a proceeding ancillary to judgment previously rendered, in exercise of original jurisdiction, as when a Circuit Court, having rendered a judgment against a county, issues a mandamus requiring its officers to levy a tax to provide for the payment of a judgment."

The writ is either peremptory, or alternative, according as it requires the defendant absolutely to obey its behest, or gives him an opportunity to show cause to the contrary. It is the usual practice to issue the alternative writ first. The learned District Judge adopted this practice.

[3] The board of directors of the public schools, parish of Orleans, was created by the Legislature of the state of Louisiana. Its duties and liabilities are marked out by the sovereign power. A duty expressly defined is the payment of previous debts. After making provision for the various school boards throughout the state, the act provided, in the last clause of paragraph (a):

"In the parish of Orleans, the budget of expenditures shall not exceed 95 per cent. of the budget of revenues."

Then follows clause (b), which provides:

"Be it further enacted, etc., that in the parish of Orleans, at the end of the year, after the payment of all of the indebtedness budgeted, the school board shall apply its surplus of 5 per cent. to any indebtedness of previous years,

reduced to final judgments, liquidating and fixing the amount of indebtedness, whether the judgment be absolute or limited to the revenues of any year."

Now the plaintiff's claim is against the school board of the city of New Orleans. It matters not whether it be termed the school board of the city of New Orleans, or the board of directors of the public schools, parish of Orleans. The latter is the successor to all the powers and liabilities of the former. There is but one school board for the territory to which the educative jurisdiction extends. The Legislature, in the act of 1912, legislates for the various school boards throughout the state, and for the school board of the parish of Orleans. The only distinction in this act is that in the parish mentioned the school board is not permitted to expend more than 95 per cent. of its revenues, and "shall apply the surplus of five per cent. to any indebtedness of previous years, reduced to judgment, fixing the amount of the indebtedness, whether the judgment be absolute or limited to the revenues of any year." This language is explicit. It is utterly free from ambiguity. It is mandatory, a legislative mandamus. It is not contended that the board obeyed it. If it has no legal justification for disregarding it, it seems the duty of this court, by use of the writ sought, to oblige obedience to the legislative will and mandate.

[4] It is, however, urged by the respondents that the mandamus was filed too late for the year 1914, and too early for the year 1915. But, if entitled to the writ at any time, the relators, if they desire, must apply for it some time. The board has apparently disregarded the mandate of the Legislature for the years 1912, 1913, and 1914. Besides, in their return, they declare the section upon which relators rely as unconstitutional and void. This is notice to the court that they do not propose to comply with it at all. Should they do so with the conviction that it was utterly invalid, it would be a gross breach of public duty.

"Ubi jus ibi remedium." Surely the relators, since their judgment has been revived and held meritorious as against the present school board, are entitled at some time to a remedy so well established as that of mandamus in such cases. Besides, there is a prayer for general relief, and under the constantly broadening principles of modern jurisprudence and practice it is competent for the court to so frame its order as to make it relate to subsequent budgets of revenues and subsequent budgets of expenditures, in order at once to carry out the purpose of the Legislature and to enforce the ascertained right of relators.

[5] Nor does the contention of the respondents that the act of 1912 relates only to debts created by the present board seem meritorious. As early as Girard v. Philadelphia, 7 Wall. 1 to 16, 19 L. Ed. 53, it was held that the identity of a municipal corporation is not destroyed by a change of its name. This rule has not been departed from where rights have inured and become vested as against the corporation whose duties and liabilities the new corporation is empowered to assume. Besides, the act creating the new board, the defendants here, must be construed in pari materia with the act of the same body setting apart 5 per cent. of the annual revenues to pay such judgments as that upon

which this proceeding is based. See also Broughton v. Pensacola, 93 U. S. 266–271, on page 268, 23 L. Ed. 896, where it is declared:

"The obligations of contracts, made whilst the corporation was in existence, survives its dissolution; and the contracts may be enforced by a court in equity, so far as to subject, for their satisfaction, any property possessed by the corporation at the time."

It follows that, where the Legislature has set apart a specific fund to discharge the ascertained obligation of a previous contract, the court having jurisdiction, by mandamus, for a like reason, can compel obedience. What is true of a municipal corporation is also true of one of its departments, such as a board of education. In School District v. Greenfield, 64 N. H. 85, 6 Atl. 484, it was held that beneficiary's rights in trust estate of school district were not lost by dissolution of district. In Port of Mobile v. Watson, 116 U. S. 305, 6 Sup. Ct. 398, 29 L. Ed. 620, it was held that the successors of Mobile City were bound by the previous contract of the city to levy a special tax to pay railroad bonds. In McKemie v. Gorman, 68 Ala. 447, it was held that contracts of school trustees with teachers were binding on successors of such trustees.

[6] The contentions of respondent that the mandamus should be denied because of the financial inability of the school board to pay its debts, that it must borrow about half a million of dollars each year to maintain the schools, and that the board was empowered to pledge its revenues for the current year for the purpose "of promptly paying its obligations and for other purposes said board may deem proper," all seem to be negatived by controlling authorities. In the case of City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560, it was held that:

"It is no return to an alternative mandamus commanding it to lay a special tax of 1 per cent. to pay the principal, and 1 per cent. to pay the interest and costs of judgments obtained against it, * * * that the funds raised by it are wholly exhausted."

There the return to the alternative writ was demurred to. The demurrer was overruled. In the opinion of Mr. Justice Swayne, for the court, the following language appears:

"The fourth section of the act of 1852 declares that the city council, if they believe the public good and best interests of the city require it, may levy and collect an annual tax of not exceeding 1 per cent., and that the amount thus collected shall be kept separate, and that annually, on the 1st of January, it shall be paid over pro rata upon the funded debt of the city that may be presented by the holders, and that this section shall continue in force until the principal and interest of the indebtedness is fully paid."

The power had not been exercised by the city authorities, and they had made no other provision for liquidating the debts due to the relator. They have no other means of possession, in payment or prospect. Excepting the facts found by the court and the undisputed testimony of Mr. Sol. Wexler, president of the board, these conditions existed in the pending case. The learned justice continues:

"The rights of the creditor and the ends of justice demand that it should be exercised in favor of affirmative action, and the law requires it. In such cases the power is in the nature of a trust for his benefit, and it was the

plain duty of the court below to give him the remedy for which he asked, by awarding a  *  *  *  writ to compel the imposition of the tax, as was done."

Justice Swayne refers to Supervisors of Rock Island County v. State Bank, 4 Wall. 435, 18 L. Ed. 419, "for a fuller exposition of our views" upon the subject. It will suffice to say that in that case it was held:

"Where power is given by statute to public officers, in permissive language— as that they 'may, if deemed advisable,' do a certain thing, the language used will be regarded as peremptory where the public interest or individual rights require that it should be."

This rule is, however, modified in the later case of United States v. Thoman, 156 U. S. 353–361, 15 Sup. Ct. 378, 39 L. Ed. 450. It is a Louisiana case. The opinion of the unanimous court is rendered by Mr. Justice White, now Chief Justice, than whom, perhaps, no other member of the Supreme Court was so familiar with the laws of Louisiana. There also was an application for mandamus to oblige the comptroller of the city of New Orleans to pay a certain judgment, upon the ground that there was a surplus of revenues for the years 1888 and 1889 in the city treasury, largely in excess of the judgments, and that the relator was entitled, by contract, to have them paid out of the surplus revenues of any year subsequent to that in which the indebtedness which he held was created. Many proceedings of this sort were consolidated. There, too, as in this case, the question was submitted to the court without a jury. The act relied upon provided that any surplus of said revenues may be applied to the payment of the indebtedness of former years. The mandamus was refused by the Circuit Court and this refusal was affirmed. In the course of his opinion, the learned justice said:

"The act of 1877, after dedicating the revenues of each year to the expenses of that year, took any surplus out of the imperative rule thus established by the proviso that 'any surplus of said revenues *may be* applied to the indebtedness of former years.' In other words, having fixed inflexibly the rule by which the revenues of the year were to be first used to pay the debts of the year, it made an exception by allowing the surplus of any year to be applied to the debts 'of former years.' The rule was imperative; the exception, permissive or facultative. Both provisions taken together operated to deprive the city government of power to use the revenues of one year to pay the debts of another, and to confer on the city authority to employ, if it so chose, the surplus of one year to pay debts of previous years. Indeed, the law made no attempt to dedicate the surplus to any particular object or to control the legislative discretion of the municipal council in its regard."

Discussing the rule of construction announced in Supervisors v. State Bank, supra, the learned justice continues:

"This rule of construction is, however, by no means invariable. Its application depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the Legislature to confer a discretionary power or to impose an imperative duty"

—citing several authorities. Among these is Minor v. Mechanics' Bank, 1 Pet. 46, on page 63, 7 L. Ed. 47, where Mr. Justice Story, delivering the opinion of the court, said:

"The argument of the defendants is that 'may,' in this section, means 'must'; and reliance is placed upon a well-known rule of construction of public

statutes, where the word 'may' is often construed as imperative. Without question, such a construction is proper, in all cases where the Legislature means to impose a positive and absolute duty, and not merely to give a discretionary power. But no general rule can be laid down upon this subject, further than that that exposition ought to be adopted in this, as in other cases, which carries into effect the true intent and object of the Legislature in the enactment. The ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions."

The rule thus announced by Justice White and Mr. Justice Story would seem to make clear the duty of this court in the application of clauses (a) and (b) of section 68 of the Louisiana Act of 1912. Here the statute is mandatory in the extremest sense. There is nothing permissive about it:

"The budget of expenditures in the parish of Orleans shall not exceed 95 per cent. of the budget" of revenues; that the school board "shall apply the surplus of 5 per cent. to indebtedness of previous years, reduced to final judgment, whether the judgments be absolute or limited to the revenues of any year."

Clearly, therefore, under the familiar rule, "Expressio unius exclusio alterius est," the Circuit Court and Supreme Court, in Thoman's Case, would have granted the mandamus, had the statute read:

"Any surplus shall be applied to the payment of the indebtedness of former years."

Here, the statute declares, the board "shall" apply all excess of revenue above 95 per cent.—that is to say, 5 per cent.—to the judgments of previous years.

[7] The third paragraph of section 71, upon which respondent relies, which empowered it to pledge its revenues for the current year for the purpose of promptly paying its obligations, and for other purposes said board may deem proper, must be construed in connection with clauses (a) and (b) of section 68. It is the duty of the court to ascertain the true intention of the Legislature, if possible, by upholding both sections and gathering its general purpose therefrom. Having created an express trust for the benefit of judgment holders of previous years, and having made a peremptory declaration that the 5 per cent. surplus shall be applied to their payment, whether they are absolute or limited by former enactments, the larger latitude just quoted from the third paragraph of section 71 must be held to relate to 95 per cent. of the revenues for the current year, and not to the 5 per cent deducted to clear away the judgments of the past, which the board and its predecessor have incurred for the education of the city's youth.

The argument offered by respondent, to the effect that the payment of this percentage thus dedicated would be inimical to the cause of education and the general welfare of the schools in the city, does not seem tenable. Surely none other than the members of such a board as the respondent here are under more lofty or compelling obligation to respect and satisfy the just demands of those teachers who consecrate their lives to the nurture and training of youth, unselfish, laborious, and sacrificial members of the community, who wield the keys to

unlock the portals of the mind, and make radiant its darkness, with the light reflected by learning's ample page.

Judgment reversed.