[Sac. No. 6030. In Bank. July 22, 1949.]

MARY RUTH MAY, Petitioner, v. BOARD OF DIRECTORS OF EL CAMINO IRRIGATION DISTRICT (a Public Corporation), Respondent.

W. Coburn Cook for Petitioner.

L. C. Smith for Respondent.

CARTER, J.—This is a proceeding in mandamus to compel the Board of Directors of the El Camino Irrigation District to levy assessments to pay bonds and interest thereon issued by the district.

The district is an existing irrigation district organized under the laws of this state (Wat. Code, div. 11, pt. 1), and embracing an area of 6,548 acres. Respondent is the board of directors of the district. The district, in 1926, pursuant to law, issued valid enforceable bonds in the principal sum of $423,000, which are general obligations of the district. They bore interest at 6 per cent payable semiannually. Petitioner is the owner of six $1,000 bonds becoming due after 1950, with interest coupons payable from 1931 to the present, which interest coupons have been presented to the district for payment, but payment has been refused and none has been offered. Respondent admits that the interest coupons have not been paid, but with respect to petitioner's allegation of ownership of the bonds and coupons, alleges that it has "no knowledge or information sufficient to enable it to answer" that claim and denies it on that basis. A denial in that form is insufficient to present an issue on the subject of ownership. (Code Civ. Proc., § 437; *Ord* v. *Steamer Uncle Sam*, 13 Cal. 369; *Gas Co.* v. *San Francisco*, 9 Cal. 453; *Turner* v. *Watkins*, 36 Cal.App. 503 [172 P. 620]; *Overton* v. *White*, 18 Cal.App. 2d 567 [64 P.2d 758, 65 P.2d 99]; *McNeill* v. *Pappas*, 74 Cal. App. 591 [241 P. 897]; *Aronson & Co.* v. *Pearson*, 199 Cal. 295 [249 P. 191]; 21 Cal.Jur. 152.) The principal of the above mentioned bonded debt matures serially from 1937 to 1954. No part of it or any of the interest coupons have been paid. No assessments to pay the bonds or interest thereon have ever been levied by the district for any period subsequent to 1933. Demand has been made upon respondent,

the Board of Supervisors of Tehama County, the district attorney of that county, and the attorney general, to cause the assessments to be levied. They have refused to act from "year to year" since 1932. The bonded debt now outstanding against the district approximates $708,190. In the early 1930's, the district acquired title to most of the land within the district by reason of nonpayment of assessments levied prior thereto. For several years after 1931 most of such land was leased by the district to tenants for about $2.00 per acre per year. Such lands were conveyed to private ownership by the district. In 1948, the district levied sufficient assessments to pay operating expenses but none for its bonded debt, reciting in its resolution that the bonded debt was more than the land was worth.

Petitioner alleges that no offer has been made by the district to settle the bonded debt, to which respondent replies that it has offered to have an appraisal made by the Reconstruction Finance Corporation and endeavor to refinance its bonded debt on the basis of such appraisal. Apparently the district has made no move to proceed under the federal bankruptcy law (50 Stats. 654, 11 U.S.C.A. §§ 401-3). Respondent's defense is that the district is insolvent considering the bonded debt; that the debt is greater than the value of the land in the district; that to require a levy of an assessment will create chaos and confusion and will not benefit the bondholders; and that the formation of the district and issuance of the bonds in the first instance was unwise. For all these reasons it asserts that mandamus, being a discretionary writ, should not issue.

Pertinent to these contentions are several fundamental principles. ■■■ The duty of the board of directors of an irrigation district to levy an assessment to pay its bonds and interest thereon is clear, unequivocal and mandatory; the board has no discretion in the matter. The statutes under which the bonds were issued and the district was formed and exists provide: "Unless otherwise provided in the proceedings for the issuance of the bonds, they and the interest on them *shall* be paid from money derived from an annual assessment upon land or charges which in the discretion of the board are fixed and collected in lieu thereof and *all land shall be and remain liable to be assessed for these payments.*" (Wat. Code, § 25219.) [Emphasis added.] "Each district by its board each year . . . *shall* levy an annual assessment upon the land within the district in an amount sufficient to raise all of the

following: (a) Interest due or that will become due on all outstanding bonds of the district and interest which the board believes will become due on district bonds authorized but not sold, all respectively before the close of the next ensuing calendar year. (b) Principal of all bonds of the district that have matured or that will mature before the close of the next ensuing calendar year." (Wat. Code, § 25650.) [Emphasis added.] As used in that code, " 'Shall' is mandatory . . ." (Wat. Code, § 15.) Bond and bond interest funds are established in which the assessment money is to be paid and from which the matured bonds and accrued interest must be paid (Wat. Code, §§ 24483, 24500, 24501). The cases have supported the clear mandatory duty in accordance with the statute. (*Provident Land Corp.* v. *Zumwalt,* 12 Cal.2d 365, 370 [85 P.2d 116]; *Mulcahy* v. *Baldwin,* 216 Cal. 517 [15 P.2d 738].) The statute under which the bonds are issued is a part of the contract between the bondholders and the district and cannot be substantially impaired under the Constitution. (*Rand* v. *Bossen,* 27 Cal.2d 61 [162 P.2d 457]; *County of San Bernardino* v. *Way,* 18 Cal.2d 647 [117 P.2d 354]; *Moody* v. *Provident Irr. Dist.,* 12 Cal.2d 389 [85 P.2d 128].) And the bondholders' remedy in case of default on the bonds is a part of that contract. (*County of San Bernardino* v. *Way, supra.*) Mandamus is the only remedy of any consequence which the bondholders have. (*Moody* v. *Provident Irr. Dist.,* 12 Cal.2d 389, 396 [85 P.2d 128]; *Carpenter* v. *Glenn-Colusa Irr. Dist.,* 14 Cal.2d 338 [94 P.2d 345]; *Clough* v. *Compton-Delevan Irr. Dist.,* 12 Cal.2d 385 [85 P.2d 126].) While it is true that they may obtain a money judgment against the district (*Irvine* v. *Bossen,* 25 Cal.2d 652 [155 P.2d 9]), the property of the district is not subject to execution to enforce the payment of such judgment (*Irvine* v. *Bossen, supra; El Camino I. Dist.* v. *El Camino L. Corp.,* 12 Cal.2d 378 [85 P.2d 123]; *Clough* v. *Compton-Delevan Irr. Dist., supra; Moody* v. *Provident Irr. Dist., supra*). It is apparent that the bondholders have no effective remedy except, as expressed in *Irvine* v. *Bossen, supra*: ". . . by mandamus proceedings [to] compel the proper officials of the governmental agency to levy and collect the tax or assessment and to do the other things required by the statute under which the bonds were issued to obtain the funds necessary to pay the bonds."

■ ·Giving consideration to the foregoing factors, it has been held repeatedly that where the payment of valid bonds issued by a municipality or similar public corporation is to be made from taxes or assessments to be levied and collected by such public corporation, it is no defense to a proceeding by a bondholder to obtain a writ of mandate to compel the levy of taxes or assessments to pay the bonds, or interest thereon, that such levy will impoverish or cause serious financial embarrassment to the public corporation. (*Rees* v. *City of Watertown,* 86 U.S. 107, 116 [22 L.Ed. 72] ; *City of Galena* v. *Amy,* 72 U.S. 705, 710 [18 L.Ed. 560] ; *State* v. *Lehman,* 100 Fla. 1313 [131 So. 533] ; *Commissioners of Columbia County* v. *King,* 13 Fla. 451; *Klemm* v. *Davenport,* 100 Fla. 627 [129 So. 904] ; *City of Victor* v. *Halstead,* 84 Colo. 450 [271 P. 185] ; *Rountree* v. *State,* 102 Fla. 246 [135 So. 888] ; *United States* v. *Board of Directors of Public Schools,* 143 C.C.A. 303 [229 F. 1] ; *Van Derzee* v. *City of Long Beach* (App.Div.2d), 39 N.Y.S.2d 401; see *City of Little Rock* v. *United States,* 43 C.C.A. 261 [103 F. 418, 421] ; *Town of Columbus* v. *Barringer,* 85 F.2d 908.) Illustrative of the reasoning on which such rule is based, we quote at length from the opinion of the Supreme Court of Florida in *State* v. *Lehman, supra,* 131 So. 533, 537: "But the city contends that by reason of its depressed and poverty stricken condition it should not be required to levy the tax as required by the alternative writ. We have searched diligently and have found no authority supporting the view that poverty may be successfully interposed as a defense to the payment of lawful obligations honestly made. The court has taken its position squarely against such a defense. In *Columbia County Commissioners* v. *King, supra,* the county commissioners of Columbia county were required to levy a tax sufficient to pay interest on its bonded indebtedness. As a defense, the county urged that more than half of the taxable area of the county had since the issue of the bonds been detached from it by the state in the creation of new counties; that two-thirds of its taxable value was in slaves which had been freed; that its farms and homes were in ruins and worthless as a result of the Civil War; and that, in consequence of such poverty and distress on the part of its people, an adequate tax to pay the interest on its bonds would be unduly burdensome and uncollectable, but this court held that Columbia county could not under such a plea be relieved of the burden that it had in law and good faith assumed.

"In *Klemm* v. *Davenport*, 100 Fla. 627 [129 So. 904, 909], filed August 4, 1930, this court examined and reaffirmed the doctrine announced in *Columbia County Commissioners* v. *King, supra,* using the following language: 'It may be that the act brought in question was passed under the afflatus of unusual conditions, and that by reason of the liberal exercise of its provisions and the blasted hopes of anticipated profits therefrom, to now enforce an ad valorem tax to pay the bonds will result in hardships and inequalities. In fact, it is asserted by defendants in error that it will amount to confiscation, the destruction of real estate values in many communities, and the making it impossible to collect taxes thereon. This contention would have been pertinent and should have received serious consideration if it has been urged in resistance to the issuance of the bonds, but when they have been issued, validated, and sold, and the proceeds applied to pave the streets of the city and to enhance the value of the property of its citizens and have contributed to its general betterment, the bonds matured, and pay time has arrived, such a contention is ill timed and offers no bar for a court of justice to decline to administer a valid law.'

"The judgment of this court in *Columbia County Commissioners* v. *King,* and *Klemm* v. *Davenport* is supported by Judge Cooley in his work on taxation in these terms:

" 'It sometimes happens that a municipality is found to have contracted indebtedness to an extent that is felt to be extremely burdensome, and then a local sentiment may spring up in favor of refusing to raise the necessary taxes for its payment. The purpose may be either to avoid the payment altogether, or to postpone it for a time, or perhaps, to force a compromise with creditors and an abatement. Whatever may be the purpose, the refusal to levy taxes to meet municipal obligations according to terms is a public wrong.' Cooley's Taxation (2d Ed.) page 75.

"The authorities in this country where the question has been litigated or treated approve this rule. [Citing cases].

"The reason for the rule is patent. The state has authorized the city of Sanford to issue its bonds and exercise its power of taxation to an extent necessary to pay the principal and interest thereon when they mature. When issued and negotiated they become a contract between the city and the holder. The power to tax is the very essence of the bonds. In the absence of a legal right to enforce this power, they would be worthless. Under the law of this state the property in

the municipality is not bound in like manner, as the property of an individual under a mortgage for their payment, but, when issued under such acts as those brought in question, the act itself becomes a part of the contract, protected from invasion by the federal Constitution (article 1, sec. 10), as much so as if it had been written at length on the face of the bond. Such statutes or the rights of bondholders acquired under them cannot be repealed or abrogated by any law of the state statutory or constitutional, until the obligations incurred under them are paid and discharged according to their terms. The law cannot be disregarded because it imposes a a heavy burden on one of the parties to a suit; if it can, the sanctity of contracts is nothing more than the shadow of the substance.

"The power to tax is legislative, it cannot be conferred on the judiciary. The amount of a tax which can be imposed on a community without being confiscatory depends on many elements, but ultimately it is a question of fact that cannot be determined except by proof. It is not shown in this case that respondent has bonded beyond its ability to pay in fact; on the ground of poverty its defense is not near so strong as was made by the county in *Columbia County Commissioners* v. *King, supra,* while its taxing power is much superior to Columbia county, but if it was not such a defense is a matter to be directed by the city to its creditors, to secure such abatement or indulgence as it can, in the way of reducing its volume of indebtedness. It is not a matter over which this court has any control. With full knowledge of its taxing ability and the terms of the controlling statutes, the city has made its contracts. These contracts are protected by both state and federal Constitutions, and this court is powerless to relax the terms of the controlling statutes. To both the citizen and his government the right to contract is the most valuable right known to the law. The Constitution guarantees its inviolability. It is the duty of every citizen to keep it so. Supporting this view in *Klemm* v. *Davenport, supra,* we said: 'A "promise to pay" is no different situation when executed by an individual than when executed by a governmental entity. It is a serious matter, is not subject to the vicissitudes of fortune, and should be as scrupulously observed in the performance, in the one instance as in the other. In times of stress and adversity, individuals are often required to toil through years and exercise the most rigid self-denial and economy to "pay", even though the business engaged in proved

a failure. A like course of conduct is no less incumbent on a governmental entity. The very foundation of our social and economic structure is confidence, and while the demands of government on the taxpayers are burdensome, it is also true that society in turn is making unusual demands on the government.' [Citing cases].

"To uphold the city's contention would lead to most disastrous consequences. It would mean that a contract holder has nothing more than a bare abstract right which he has no power to enforce, in other words a right without a remedy, which is as if it were not. Without the remedy or means to enforce, a contract in law may be said not to exist, and its obligation falls in the class of a mere social amenity, its enforcement resting solely on the whim and caprice of the obligor. If the obligor rather than the court is to adjudicate the question of when or whether or not the obligation of his contract, in the light of the statute controlling, may be enforced, then there is no such thing as the inviolability of contracts and the stain of repudiation is on every governmental entity in this state. Our credit and integrity at home and abroad would be destroyed and no worthy enterprise could borrow a dollar. The aggravated effect of the boom, the fly quarantine, the hurricane, and other misfortunes that have befallen us would not be comparable to the situation thus created."

The propositions (1) that mandamus may be denied or granted within the discretion of the court, and (2) that here the exercise of such discretion requires a denial because of the circumstances mentioned in respondent's contentions, should not result in a refusal to issue the writ in the instant case.

It has been stated generally in many decisions that whether or not a writ of mandate issues, lies within the discretion of the court. (*Irvine* v. *Gibson,* 19 Cal.2d 14 [118 P.2d 812]; *Betty* v. *Superior Court,* 18 Cal.2d 619 [116 P.2d 947]; *Ault* v. *Council of the City of San Rafael,* 17 Cal.2d 415 [110 P.2d 379]; *Bartholomae Oil Corp.* v. *Superior Court,* 18 Cal.2d 726 [117 P.2d 674]; cases cited 16 Cal.Jur. 768 et seq.; 7 Cal.Jur. 10-Yr.Supp. 795 et seq., and pocket supps.) Yet it must be remembered that "The writ *must* be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law . . ." (Code Civ. Proc., § 1086), [emphasis added], and where ". . . the petitioner has shown that the respondents have refused to perform a clear legal

duty not involving the exercise of any discretion. Under such circumstances, the writ should issue.'' (*Betty* v. *Superior Court*, 18 Cal.2d 619, 622 [116 P.2d 947].) Or, as otherwise phrased, ''. . . where one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy, and adequate remedy in the ordinary course of law, he is entitled as a matter of right to the writ, or, in other words, it would be an abuse of discretion to refuse it.'' (*Gay* v. *Torrance*, 145 Cal. 144, 148 [78 P. 540].) (See, to the same effect, *Potomac Oil Co.* v. *Dye*, 10 Cal.App. 534 [102 P. 677]; *Larkin* v. *Superior Court*, 171 Cal. 719, 726 [154 P. 841, Ann.Cas. 1917D 670]; *Hutchinson Lbr. Co.* v. *Reclamation Dist. No. 1619*, 81 Cal.App. 427 [254 P. 606]; *Williams* v. *City of Stockton*, 195 Cal. 743 [235 P. 986]; *San Francisco* v. *Superior Court*, 94 Cal.App. 318 [271 P. 121].) It has been held that the writ will issue as a matter of right on behalf of the obligee to enforce his obligation against a municipality—that there is no discretion. (See *United States* v. *City of Vero Beach*, 90 F.2d 70; *City of Victor* v. *Halstead*, 84 Colo. 450 [271 P. 185]; *State* v. *City of Petersburg*, 126 Fla. 233 [170 So. 730].) From the cases heretofore cited holding that financial distress is not a defense to the issuance of the writ, it follows that in a case such as this there could be no element of discretion involved.

 Equitable considerations favor the granting of the writ. There is no question that petitioner has a substantial right to be protected. She holds valid, binding and solemn obligations of the district. She has no other effective remedy. The district has made no move to discharge those obligations for over 15 years. It is unfortuate that the district is in financial difficulties, and in effect, insolvent, but that furnishes insufficient reason under the circumstances for its refusal to levy the assessment here demanded. It may be that the burden of the assessment will be heavy on the landowners within the district, yet during the war years and since, it is a matter of common knowledge that farmers have prospered, receiving substantial prices for their produce. In spite of that, the district continued to refuse to levy any assessments to pay its bonds or interest which had accrued thereon. The stalemate cannot be permitted to continue indefinitely. The district is not without relief from its predicament. For many° years the door has been open, and still is, for it to proceed in bankruptcy under the federal laws, a step which many distressed districts have taken. In such a proceeding recal-

citrant minority bondholders may be brought into line with an adjustment plan approved by the federal courts. (11 U.S.C.A. §§ 401-3.) The equities here are on the side of the bondholders, for the landowners in the district, through their board of directors, are in a position to postpone indefinitely the levy of an assessment. They have their land and are reaping the profits from it. The bondholders, on the other hand, are completely helpless unless they accept less than the face value of their obligations, or the courts give them the only remedy available which will bring the matter to a head and require action by the district.

The case of *El Camino L. Corp.* v. *Board of Supervisors,* 43 Cal.App.2d 351 [110 P.2d 1076], involved the refusal of a writ of mandate asked by some of the bondholders of the district here concerned, which proceeding was directed to the board of supervisors rather than the board of directors of the district. The superior court's refusal to issue the writ was affirmed by the District Court of Appeal. That case failed to give consideration to the authorities and factors above discussed and must be disapproved. Moreover, the proceeding there was commenced in 1940, and the decision by the District Court of Appeal was rendered on March 6, 1941. Since then the values of farm products and lands have increased considerably, yet the district still has refused to levy any assessments whatsoever for the purpose of raising money to pay the matured bonds or interest coupons. Thus, regardless of the holding of the court in 1941, the subsequent events and changed conditions have eliminated the controlling factors considered in that case.

While this court ordinarily will not entertain an original application for a writ of mandate where the proceeding could have been prosecuted in the superior court, it will act where the circumstances justify it. (See *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303 [144 P.2d 4]; 16 Cal.Jur. 863-4; Rules on Appeal, rule 56; 165 A.L.R. 1431.) [10] Here, we have the following salient considerations: The district has consistently refused to levy any assessment for the retirement of its bonded obligation or the accrued interest thereon for many years; it is unlikely that a superior court would issue a writ in view of the holding in *El Camino L. Corp.* v. *Board of Supervisors, supra*; since the decision in that case, more than eight years have elapsed and still the district does nothing; the district is a public agency of the state and its

credit should not continue to be in disrepute in view of the changed economic conditions of which we take judicial notice.

Let the writ of mandate issue ordering respondent to levy an assessment pursuant to law sufficient to discharge the matured obligations held by petitioner, together with interest thereon as provided by law.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.