## MILLER v. UNITED STATES.

(Circuit Court, S. D. New York. April 26, 1900.)

OFFICERS OF UNITED STATES—RIGHT TO SALARY FIXED BY CONGRESS.

One holding an office under the treasury department, who was appointed by the secretary, in connection with such office, a special inspector of foreign vessels, without additional salary, under Act Aug. 7, 1882, which requires such officers to be appointed, and fixes their salary, and who accepted the appointment and performed the duties of the office, is entitled to recover the salary. It is not within the power of the secretary to reduce or change the salary of an officer which congress has specifically prescribed, and an agreement to that effect, being contrary to public policy, will not be enforced or given effect as an estoppel.

Action under the Tucker act, tried by the court without a jury.

The following are the findings of fact:

### I.

Claimant, a citizen of the United States, was, on May 19, 1891, appointed an assistant inspector of steam vessels for the district of New York, under section 4414, Rev. St. U. S., with compensation at the rate of $2,000 per annum. He took and forwarded the oath required by law, and while holding such office of assistant inspector of steam vessels he was appointed special inspector of foreign steam vessels. Said appointment reads as follows:

### II.

"Division of Appointments.

"Treasury Department, Office of the Secretary,

"Washington, D. C., May 19, 1891.

"Mr. John Miller, New York City, N. Y.—Sir: Under the provisions of an act of congress approved August 7th, 1882, entitled 'An act to amend section 4400 of title 52 of the Revised Statutes of the United States, concerning the regulations of steam vessels,' you are hereby appointed to serve, in connection with your appointment as assistant inspector of steam vessels, as a special inspector of foreign steam vessels, without additional compensation, for the port of New York, N. Y.; the appointment to take effect from date of oath.

"[Signed] Respectfully yours, Charles Foster, Secretary."

### III.

Thereupon the claimant took the oath therein referred to, which was in the usual form of an oath of office, and transmitted the same to the secretary of the treasury. He was not required to, and he did not, give nor offer to

give the bond prescribed by statute for the office of special inspector of foreign steam vessels. From the time of taking the oath aforesaid until March 1, 1895, the claimant performed whatever duties were required of him as special inspector of foreign steam vessels at said port.

### IV.

By letter dated November 20, 1893, from the secretary of the treasury, under the provisions of section 4414 of the Revised Statutes of the United States, the claimant was appointed an assistant inspector of boilers of steam vessels for the district of New York, with compensation at the rate of two thousand dollars ($2,000) per annum. Subsequently claimant accepted said appointment, and duly qualified by taking the prescribed oath of office, and by forwarding the same to the treasury department. No bond was required. He then and there entered upon the discharge of his duties, and continued to perform the same until the appointment of his successor on October 8, 1894.

### V.

On or about November 20, 1893, claimant received from the secretary of the treasury a communication, of which the following is a copy:.

"Division of Appointments.

"Treasury Department, Office of the Secretary,

"Washington, D. C., November 20, 1893.

"Mr. John Miller, 73 Henry Street, Brooklyn, N. Y.—Sir: Under the provisions of an act of congress approved August 7, 1882, entitled 'An act to amend section 4400 of title 52 of the Revised Statutes of the United States concerning the regulation of steam vessels,' you are hereby appointed to serve, in connection with your appointment as assistant inspector of boilers of steam vessels, as a special inspector of foreign steam vessels, without additional compensation, for the district of New York; the appointment to take effect from date of oath, which must not be administered before December 1, 1893.

"[Signed]    Respectfully yours,         W. E. Curtis, Acting Secretary."

### VI.

On or about the 20th day of November, 1893, the claimant took the oath above referred to, which was in the usual form of an oath of office, and transmitted the same to the secretary of the treasury on that date. He was not required to nor did he give or offer to give the bond prescribed by statute for the office of special inspector of foreign steam vessels. From the time of taking the oath of office the claimant performed whatever duties were required of him as special inspector of foreign steam vessels.

### VII.

On or about September 8, 1894, claimant received from the secretary of the treasury a communication, of which the following is a copy:

"Division of Appointments.

"Treasury Department, Office of the Secretary,

"Washington, D. C., Sept. 7, 1894.

"Mr. John Miller, Assistant Inspector of Boilers of Steam Vessels, New York, N. Y.—Sir: Your services as assistant inspector of boilers of steam vessels at the port of New York, Second district, are hereby discontinued, to take effect upon the appointment and qualification of your successor.

"[Signed]    Respectfully yours,         J. G. Carlisle, Secretary."

### VIII.

On or about October 9, 1894, the claimant in like manner received the following communication:

"Division of Appointments.

"Treasury Department, Office of the Secretary,

"Washington, D. C., October 8, 1884.

"Mr. John Miller, Assistant Inspector of Boilers of Steam Vessels, New York, N. Y.—Sir: Referring to department letter of the 7th ultimo, you are hereby informed that, a successor having been appointed, your services as assistant inspector of boilers of steam vessels for the port of New York will not be required from and after the receipt of this communication.

"[Signed] Respectfully yours. J. G. Carlisle, Secretary."

## IX.

The law which created the office of special inspector of steam vessels was repealed March 1, 1895.

## X.

The claimant had not been paid any of the salary attached by law to such office, the amounts due therefor being $2,000, with interest from May 25, 1892; $2,000, with interest from May 25, 1893; $2,000, with interest from May 25, 1894; $1,555, with interest from March, 1895.

Robert D. Benedict, for plaintiff.

Arthur M. King, Asst. U. S. Atty.

LACOMBE, Circuit Judge. I concur in the opinion of the dissentients of the court of claims in Glavey v. U. S., 35 Ct. Cl. 242. The statute under which the appointment was made (22 Stat. 346) reads as follows:

"Sec. 2. That for the purpose of carrying into effect the provisions of this act the secretary of the treasury shall appoint officers to be designated as special inspectors of foreign steam-vessels, at a salary of two thousand dollars per annum each, and there shall be appointed of such officers at the port of New York, six; at the port of Boston, two; at the port of Baltimore, two; at the port of Philadelphia, two; at the port of New Orleans, two; and at the port of San Francisco, two."

It may be that the secretary of the treasury differed from congress as to the wisdom of this statute; that, in his opinion, the required services could be obtained more economically than by the payment of the salaries fixed by congress; that he felt sure that, if he should appoint some subordinate officer of his department to the office of special inspector, notifying him at the same time that he would not be paid the salary, he would find such appointee silently or affirmatively acquiescent, lest by declining he should risk discharge from the office such subordinate already held. Nevertheless, when congress has not only created the office, and directed the secretary to appoint some one to it, but has also fixed the salary at a specific sum, surely the executive officer has no power, however meritorious his motives may be, to overrule the decision of congress, and reduce the salary. Any bargain whereby, in advance of his appointment to an office with a salary fixed by legislative authority, the appointee attempts to agree with the individual making the appointment that he will waive all salary or accept something less than the statutory sum, is contrary to public policy, and should not be tolerated by the courts. It is to be assumed that congress fixes the salary with due regard to the work to be performed, and the grade of man that such salary may secure. It would lead to the grossest abuses if a candi-

date and the executive officer who selects him may combine together so as entirely to exclude from consideration the whole class of men who are willing to take the office on the salary congress has fixed, but will not come for less. And, if public policy prohibit such a bargain in advance, it would seem that a court should be astute not to give effect to such illegal contract by indirection, as by spelling out a waiver or estoppel. Plaintiff may take judgment for the full amount claimed.