GARDINER SAVINGS INSTITUTION v. HOGSETT et al.

(Circuit Court of Appeals, Sixth Circuit.  January 3, 1912.)

No. 2,140.

MANDAMUS (§ 116*)—RETROACTIVE ACTS—ROAD IMPROVEMENT BONDS.

Under Ohio Const. art. 2, § 28, which prohibits retroactive laws, Act Feb. 28, 1906 (98 Ohio Laws, p. 32), which provides that the commissioners of a county in which road commissioners have incurred indebtedness under color of statute may issue bonds to extend the time of payment, and that the county commissioners may levy an annual tax on the property in the road district, does not warrant mandamus to compel a levy of taxes or issue of bonds to pay a judgment based on bonds issued for a road improvement where the power of taxation to pay the last-mentioned bonds, as limited by Act March 28, 1876 (73 Ohio Laws, p. 96) § 1, and Act April 19, 1883 (80 Ohio Laws, p. 223, § 1), amending section 4812, Rev. St., was exhausted.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 116.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Mandamus by the Gardiner Savings Institution against J. N. Hogsett and others.  Judgment denying the writ, and plaintiff brings error.  Affirmed.

W. B. Sanders (Squire, Sanders & Dempsey, on the brief), for plaintiff in error.

N. Craig McBride, Pros. Atty., and S. F. Steele, for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. . This is a proceeding in mandamus.  Demurrer to the amended petition was sustained in the court below and the writ refused.  The object sought through the writ is to compel either the levy of a special tax on the taxable property situated in a road district, known as Marshall Free Turnpike No. 54, of Highland county, Ohio, or the issue and sale of bonds of the county sufficient in either. event to pay a certain judgment.  This judgment is for $3,379.60, with interest and costs, and execution thereon was prior to commencement of this suit returned nulla bona.  The relator (plaintiff in error) recovered the judgment in the court below at its October term, 1904, against the defendants in error, Hogsett and Head, as commissioners of the road district.  The writ is sought against the nominal judgment debtors to compel them, as commissioners of the road district, to levy the special tax; and, alternatively,

against Bennington, Carey, and Kesler, as commissioners of the county, to compel them to issue and sell the bonds (each to bear a promise binding the county), and also to levy annually a special tax on the taxable property within the road district sufficient to pay the accruing interest and ultimately to redeem the bonds. The tax in either case would be laid upon the same taxable property. If bonds should be issued, the judgment would be paid out of the proceeds arising from their sale.

The power to impose such a tax thus becomes important, no matter whether the tax were applied to the payment of the judgment directly, or to the payment of the annual interest on the bonds and finally to their redemption. The validity of such a tax as regards the annual interest on the bonds and their redemption, however, is of even greater moment than it is in respect to the judgment. The bonds bearing the promise and so pledging the faith and credit of the county would, if. issued, present the problem of whether the property of the entire county could, in the present state of the law, be taxed to meet the interest and principal.

The board of commissioners of Highland county, in pursuance of certain statutes called the "One Mile Pike Law," made an order, dated August 6, 1883, designating certain territory within the county as the road district, and also appointed three commissioners of the district (one of whom has since died, leaving the two before named surviving). In virtue of the statutes mentioned, these road commissioners issued and sold negotiable 6 per cent. coupon bonds in the sum of $5,600, dated August 1, 1885, part maturing March 1, 1894, part March 1, 1895, and the rest March 1, 1896, for the purpose of raising money to defray the expenses of constructing a road improvement in the road district before named. The relator was the owner of some of these bonds and coupons, and they were the basis of the judgment.

The road commissioners have no funds with which to pay the judgment; and it is averred that it is the duty of the county commissioners to issue and sell bonds of the county for the purpose of paying the indebtedness stated, including the judgment, in accordance with a statute of Ohio passed February 28, 1906 (98 O. L. 32); but that the commissioners, although duly requested, have failed and neglected to issue any of such bonds, and the relator, being without remedy, prays for the interposition of the court by writ of mandamus.

The statute upon which the application for the writ is based provides that the commissioners of any county in which road commissioners appointed by the county commissioners—

"have incurred indebtedness on account of road improvements under color of any legislative act, are hereby authorized, for the purpose of extending the time of payment of such indebtedness and reducing the rate of interest thereon, to issue and sell the bonds of the county in such amounts and for such length of time, and for such rate of interest not exceeding five per centum per annum, payable semiannually, as such county commissioners may determine. The money realized from the sale of such bonds shall be paid to the road commissioners, to be used only for the purpose of paying the indebtedness so incurred by them on account of such road improvements.

"Sec. 2. To pay the principal and interest of said bonds, the county commissioners are hereby authorized to levy a tax sufficient for that purpose annually on all of the taxable property of every kind within the limits of any * * * road district, for which such road commissioners were appointed."

Before the board of county commissioners could obtain jurisdiction to do the acts alleged by the amended petition to have been performed, it was necessary under the law that a majority of all the landholders residing and owning lands within the road district should present a petition to the board for the appointment of commissioners to lay out and establish a free turnpike between points within the county, stating in their petition that they desired the board to levy an extra tax not exceeding 10 mills on the dollar valuation in any one year on the lands and taxable property within the bounds of the road, and also the number of years they desired the levy to continue not exceeding eight years; that they should further satisfy the commissioners that public notice of the intended application had been given in some newspaper of general circulation in the county for at least four consecutive weeks preceding the general meeting. 73 Ohio Laws, 96, § 1.

Enough appears to show that the requisite petition of landowners was filed, which limited the tax levy to a period of eight years at a specified rate per annum, and that this resulted in the levying of taxes accordingly upon the taxable property of the road district. For mode of procedure, see 72 O. L. 94, § 2; 73 O. L. 97, § 3. The county commissioners were given authority when they deemed its exercise necessary for the purpose of providing means for completing an improvement and liquidating the indebtedness incurred on account of the road to continue the tax originally levied for a further period of not exceeding five years. 80 O. L. 223, § 1, amending section 4812, Rev. St. This power appears also to have been exercised; at least it appears by the undisputed statements of counsel and still the cost of the road seems to have exceeded the amount realized by the levies.

The jurisdiction and powers thus given were in their nature and object at once special and restrictive. Jurisdiction was taken and the powers, including the power of taxation, were long ago exercised and exhausted; and this explains the averments of the petition touching the lack of funds with which to pay the judgment. It will be observed that the enforcement of a peremptory writ would result in the imposition of further special taxes upon the same taxable property that has heretofore been taxed for a period of 13 years for the same purpose, namely, to meet the indebtedness incurred for the construction of this particular road.

Is the statute, above in part quoted, a sufficient warrant to justify the granting of a writ to compel the levying of any of the taxes or the issuing of any of the bonds mentioned in order to make good the deficiency in question? It will be borne in mind that the statute in terms provides for "extending the time of payment of such indebtedness and reducing the rate of interest thereon," and that it in terms authorizes the levy to be made on the "taxable property within the limits" of the road district. It is insisted by defendants, and it was

held by the court below, that the case thus presented falls within the rule of Miller v. Hixson, Treasurer, 64 Ohio St. 39, 59 N. E. 749. It is well known that the judges concurring in a judgment of the Ohio Supreme Court limit the conclusions reached to the statements contained in the syllabus. The judges were unanimous in that decision, and we quote the following paragraphs:

"(1) A statute which imposes a new or additional burden, duty, obligation, or liability, as to past transactions, is retroactive, and in conflict with that part of section 28, art. 2, of the Constitution, which provides that 'the General Assembly shall have no power to pass retroactive laws.'

"(2) The amendment of section 4812, Revised Statutes (83 O. L. 85), passed April 17, 1886, adding five years to the period for which extra taxes might be levied under the one mile pike law, is retroactive and void as to such pikes as had been constructed before the passage of that amendment."

"(4) A purchaser of bonds issued under the one mile pike law is bound to take notice of the limitations upon the power of taxation, the extent of the special taxing district, and of the valuation of the property therein; and, if he makes a mistake, the loss must fall upon him, rather than upon the property owners in such special district."

It appears in the present case by the practical concurrence of counsel that the extension of the levy for a further period of five years was made April 7, 1884, and that the road was completed and accepted on November 2, 1885. In the course of the opinion in Miller v. Hixson, Treasurer (49), it was said of an amendment to section 4812 (April 17, 1886, 83 O. L. 85) that:

"The period for which a levy might be made for liquidating any indebtedness incurred on account of such road was extended to 10 years in addition to the 8 years on petition: thus making in all 18 years instead of 13 years."

The statute on which this suit is based was passed February 28, 1906; and it provides for "extending the time of payment of such indebtedness." Upon this point it is therefore precisely the same in practical effect as was the statute in the case of Miller v. Hixson. In order to show a portion of the course of reasoning by which the judges reached the conclusions stated in the syllabus, before quoted, we may refer to the opinion (51, 52):

"The statute in question authorized a levy of 10 mills each year for 13 years and no longer, and to now impose this extra tax for a period of 5 years beyond the 13 is imposing an additional burden upon the property owners in this taxing district, not assumed by them when they signed and presented their petition for the road, and which the General Assembly assured them by the limitation in the statute should never be imposed. This assurance the Constitution required the General Assembly to make good, and it therefore had no power to add this extension of 5 years to the 13 as to the road in question, and the extra taxes imposed under that extension are unauthorized and void, and should be enjoined."

It can make no sort of difference that the length of time during which the special tax now in question would have to be levied is not definite. It is enough to know that, whatever special tax might be levied here, it would correspond, in principle and effect, with the tax condemned in Miller v. Hixson. It is urged, however, that the present case is distinguishable from that case, because the statute there involved did not provide for a levy upon all the taxable property (it omitted personalty) within the road district; but, while in the opinion

that was considered as an additional reason, it is nowhere to be found in the syllabus. The case was disposed of by the court upon the ground alone that the special tax was within the inhibition of the retroactive clause of the Constitution.

A further distinction is urged that the statute in that case attempted merely to continue the levy, which had been made under the petition of the property holders; while here the statute vests authority in the county commissioners to assume on behalf of the county the entire indebtedness by issuing the bonds of the county. This fails, we think, fully to consider the fact that in the statute now relied on the only mention made of a right to levy a tax at all is to authorize the commissioners to tax the property of the same road district that bore the burden of the former taxes. They are "authorized to levy a tax," just as they are "authorized" to issue and sell the bonds; and authorities are cited by learned counsel for plaintiff to show that, since these words in terms call for the exercise of power in favor of private persons, the language is in effect mandatory. United States v. Thoman, 156 U. S. 353, 359, 15 Sup. Ct. 378, 39 L. Ed. 450; Supervisors v. United States, 4 Wall. 435, 446, 18 L. Ed. 419; Mason v. Fearson, 9 How. 248, 258, 13 L. Ed. 125. So far then as the legislative purpose is concerned, it ought to follow that the powers (1) to issue the bonds, and (2) to levy the special tax, as given by sections 1 and 2 of the act upon which this case is founded, constitute a scheme that shall be worked out as a unit or not at all. And it is not conceivable that the Legislature can through this statute or any other do the same thing that was forbidden by the decision in Miller v. Hixson.

Some decisions are cited to distinguish the present case from the one just alluded to; but we are unable to discover that any of them involved the present question. The most that can be said of them is, that they relate to legislative authority or requirement to assume liability identical, both as to obligor and obligation, with the liability originally undertaken under color of law, and that, too, in the absence of any initial limitation of expenditure imposed by taxpayers, or to a question whether a judgment could be recovered, not whether a tax levy could be enforced, against the particular body that had issued the bonds or other obligation in dispute, the defense being simply either a claim of constitutional invalidity of the statute under which the bonds had been issued or of irregularity in the exercise of the power conferred, or both.

The only other claim that need be noticed is that the statute vests a discretion in the county commissioners either to tax the property within the road district or that within the county at large. This in effect urges the allowance of a peremptory writ against the county commissioners requiring them to issue county bonds, as distinguished from road district bonds, and the postponement of the question of taxation until later. The cases of Loeb v. Columbia Township Trustees, 179 U. S. 472, 21 Sup. Ct. 174, 45 L. Ed. 280, and Board of Com'rs v. Gardiner Sav. Inst., 119 Fed. 36, 55 C. C. A. 614 (C. C. A. 6th Cir.), are relied on in support of this view. The question involved in

each of those cases was whether a judgment could be recovered in the face of a defense urged (unsuccessfully) that the statutes under which the bonds were issued were unconstitutional. It is true that Mr. Justice Harlan in the one case and the present Mr. Justice Day in the other did in substance say that if refusal to satisfy the judgment should be made, and if appropriate proceedings should then be instituted to compel an assessment or a levy to raise money sufficient to pay the judgment, the question would then arise whether the mode prescribed by the act under review could be legally pursued; and, if not, "whether the laws of the state did not authorize the adoption of some other mode, by which the defendant could be compelled to meet the obligations it assumed under the authority of the Legislature of the state." Loeb Case, 179 U. S. 490, 21 Sup. Ct. 181, 45 L. Ed. 280. Neither of the learned justices, however, said anything that would countenance the granting of a peremptory writ to compel an administrative board to issue bonds, in the absence of any valid statutory authority disclosing a legislative intent to impose a tax for the very purpose of paying the bonds so sought to be exacted. It is clear to us that under the decision in Miller v. Hixson it would be violative of the retroactive clause of the Ohio Constitution to levy the special tax, which in terms is authorized by section 2 of the statute for the purpose of paying the bonds described in the first section; and we think it would be doing violence to the legislative purpose disclosed to require the bonds to be issued without regard to the only express means provided for their payment.

The judgment below must be affirmed, with costs.