Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
This is an action by a paymaster’s clerk for mileage.
The plaintiff was appointed paymaster’s clerk on August 9, 1913, by the Secretary of the Navy, whose order, addressed to plaintiff at Vallejo, Cal., was as follows:
“ 1. Having been nominated by Paymaster David Potter for duty as paymaster’s clerk on board the Minnesota, you are authorized to report to the commandant, navy yard, Mare Island, Cal., for the necessary physical examination as required by Article 3318, U. S. Navy Regulations, 1913.
“2. If found qualified, the examining officer will endorse such fact upon this order; you will execute the enclosed acceptance, oath of office, and beneficiary slip; and will proceed at your own expense to Newport, R. I., reporting to the commanding officer of the Minnesota for the above-mentioned duty.
“3. Upon the completion of the examination forward to the Bureau of Navigation a true copy of this order with all endorsements, together with your acceptance, oath of office, and beneficiary slip.”
There was sent to plaintiff on said date by the Acting Secretary of the Navy a telegram, as follows:
“ Nomination by Paymaster Potter, duty Minnesota. Authorized report Mare Island, Cal., necessary physical examination. If qualified, authorized proceed at own expense to Newport, R. I., and report Minnesota as paymaster’s clerk.”
Plaintiff reported to the commandant of the Mare Island Navy Yard and was found qualified by the board of medical examiners on August 11,1913, and on that day accepted the appointment and executed the oath of office. On the 13th day of August, 1913, he left Vallejo for Newport and duly reported for service. There was a few days’ delay in getting aboard *34 the Minnesota because she had left Newport when he arrived there, but the delay is unimportant in this case.
The expense of his travel to Newport at 8 cents per mile amounts to $266.48. The question is whether plaintiff is entitled to recover said expense of travel.
The act of June 24, 1910, 36 Stats., 606, reads as follows:
“ All paymaster’s clerks shall, while holding appointment in accordance with law, receive the same pay and allowances and have the same rights of retirement as warrant officers of like length of service in the Navy.”
The act of March 3, 1901, 31 Stats., 1029, provides:
“That in lieu of traveling expenses and' all allowances whatsoever connected therewith, including transportation .of baggage, officers of the Navy traveling from point to point within the United States under orders shall hereafter receive mileage at the rate of eight cents per mile, distance to be computed by the shortest usually traveled route.”
The plaintiff’s said claim for mileage and for two days’ pay from August 11. to August 13, designated as “ waiting-orders pay,” was presented to the Auditor for the Navy Department, who allowed the “ waiting-orders pay ” for two days and disallowed the mileage, and the auditor’s decision was upon appeal to the comptroller affirmed.
It was thus in effect held that plaintiff was “ holding appointment in accordance with law ” within the meaning of said act of 1910 on August 11, 1913, and we think that conclusion can not be questioned under the facts. He was allowed his salary from the date of execution of his oath of office.
It is unnecessary to enter upon a discussion as to whether plaintiff was an officer in the Navy or an officer of the United States. The fact is he was appointed by the head of a department under lawful authority. But in our view the rights of a duly appointed paymaster’s clerk under said act of 1910 are not dependent upon the character of his position. That act prescribes what the pay and allowances and certain other privileges or emoluments of paymasters’ clerks shall be. If an act provided that clerks in the office of the Auditor for the War Department should receive the same pay and allowances as warrant officers in the Navy, *35 we would not inquire whether the clerks were officers in the Navy any more than we would suppose that because the Navy personnel act assimilates the pay of officers in the Navy to that of officers of corresponding rank in the Army they had to become officers of the Army. When the Supreme Court considered the Mouat case, 124 U. S., 303, and the act of 1876, there was no such act as that of June 24, 1910, and they were called upon to decide whether a paymaster’s clerk was an officer of the Navy under the act in question. But with the last-named act before us we find that the pay and allowances of paymasters’ clerks are the same as those of “ warrant officers of like length of service in the Navy,” and we accordingly refer to the acts fixing the pay and allowances of such officers to find what the pay and allowances of plaintiff were. The said act of March 3, 1901, supplies the answer so far as mileage is concerned.
The Government insists that the telegram mentioned notified plaintiff of his appointment and “ authorized ” him to proceed at his own expense to Newport and that the order of the Secretary of the Navy also notified him that he should proceed at his own expense to Newport, and that therefore his appointment was conditioned upon his reporting at Newport at his own expense. In other words, the argument for the Government is that the plaintiff was appointed paymaster’s clerk upon condition that he would travel to his post of duty without expense to the Government, and that when he accepted the position he did so with said condition attached, and hence that he can not afterwards claim the statutory mileage.
It may be admitted for argument’s sake that if we look to the telegram alone there might be room for contention that it did not authorize plaintiff to “ execute the inclosed acceptance, oath of office, and beneficiary slip ” referred to in the Secretary’s order, but merely authorized him to report at Mare Island for physical examination and if found qualified merely “authorized” him to proceed at his own expense to Newport, where presumably he would take the oath of office. But, as has been said, the auditing department has found that there was ample authority for his *36 executing the oath of office at Mare Island. And this ample authority is certainly found in the order of the Secretary of the Navy. That order (and it is so designated in the' third paragraph of the same) notified plaintiff of his appointment and “ authorized ” him to report to the commandant for the necessary physical examination. Then follows a direction that if found qualified “ the examining officer will indorse such fact upon this order,” which, of course, was an order in that regard to the examining officer, and the plaintiff was directed to execute the inclosed acceptance and oath of office. The language plainly imports that the oath of office was to be executed before he was to proceed to Newport, as is apparent from the said language as well as from the direction that “ upon the completion of the examination ” he was to forward to the Bureau of Navigation a true copy of the order “ together with your acceptance, oath of office, and beneficiary slip.” If it be suggested that plaintiff was not traveling “ under orders ” because the plaintiff was, as it were, a civilian and not an officer at the date of the Secretary’s order, the reply is that the Secretary evidently intended his communication to be a continuing order and issued no other “ order ” that the officer report for duty. He characterizes it as an order, directs the commandant to indorse it as such; the plaintiff acted upon it as an order and proceeded to his post of duty. As soon as the officer executed his oath of office under said appointment he became an officer, as was held by the auditor as above stated. The plaintiff was ordered to forward a copy of the order and his oath of office, his acceptance, and the beneficiary slip to the Bureau of Navigation. That could only be done after the oath was executed and when he accordingly became an officer. It will not do to treat the order as efficacious for some purposes and not for the purpose of travel when he was by the same order directed to report “ to the commanding officer of the Minnesota for the above-mentioned duty.” He acted upon the order, and if having become an officer under its direction he had declined to proceed to Newport can there be any doubt as to what his attitude would have been upon the question of obedience to the orders of a superior officer? We think he traveled “ under orders.”
*37 The question, therefore,-recurs whether there could lawfully be attached to the order of appointment or the order to proceed to Newport the condition that he must reach his post of duty, assigned by the same order, without expense to the Government, if that was the intention of the order.
There can be but one answer to the question under the decisions. The right of an officer of the Navy, and that includes a paymaster’s clerk, to the emoluments and allowances pertaining to his office and prescribed by the statute is fixed, and the appointing power can not attach conditions to the appointment which have the effect of depriving the officer of what the law authorizes him to receive. The Secretary would have had no more right to require the plaintiff to waive his statutory travel pay than he would have had to require a waiver of part of his salary as a condition precedent to his acceptance or enjoyment of his office.
In Glavey's case, 182 U. S., 595, the Supreme Court refused to uphold a stipulation whereby Glavey, who was local inspector, had agreed to exercise the functions <3f special inspector “without additional compensation.” The stipulation was declared to be invalid, against public policy, and one that imposed no legal obligation upon the appointee. It was declared by the court that “it was not competent for the Secretary of the Treasury, having the power of appointment, to defeat that purpose by what was, in effect, a bargain or agreement between him and his appointee that the latter should not demand the compensation fixed by statute.” The court quoted with approval the language of Judge Lacombe in Miller’s case, 103 Fed., 413, 415, where he said: “Any bargain whereby in advance of his appointment to an office with a salary fixed by legislative authority the appointee attempts to agree with the individual making the appointment that he will waive all salary or accept something less than the statutory sum is contrary to public policy and should not be tolerated by the courts. * * * And if public policy prohibit such a bargain in advance, it would seem that a court should be astute not to give effect to such illegal contract by indirection, as by spelling out a waiver or estoppel.” The Glavey case was reviewed and followed in Andrews case, 240 U. S., 90; 49 C. Cls., 391.
*38 Andrews was a captain in the United States Army. Having accepted employment with a commercial company, he was granted six months’ leave of absence by special order of the War Department, and his leave was extended for four months, to take effect July 1, 1907, and to expire October 31, 1907. On July 31, 1907, while he was enjoying said leave and still with said company, The Adjutant General sent said officer a telegram, stating: “ By direction of the President, although your leave is not revoked, your absence from this date will be without pay.” Capt. Andrews had not requested leave of absence without pay, but he made no protest against said action, nor did he relinquish his leave and return to duty. He was not paid his salary from August 1 to October 31, and he brought suit in this court to recover the statutory half pay provided in cases of leave of absence. This court (49 C. Cls., 391) and the Supreme Court held that Andrews was entitled to his salary for the time in question. Referring to the Glavey case, the Chief Justice of the Supreme Court said (p. 95): “Because that case concerned an illegal condition attached to the performance of the duties of an office and this involves an illegal condition attached to a grant of leave affords no ground for distinction between that case and this. The basis of the ruling in the Glavey ease was the right of the official to rely upon the provisions of the statute and the resulting want of power to apply a principle of estoppel.” There can be no difference in principle between an attempt to impose a condition upon the right to the statutory salary and an attempt to attach a condition to the right to the fixed statutory allowances. “The claim of this officer rests not upon any contract, expressed or implied, with the Government, but upon the acts of Congress which provide for his compensation.” McDonald case, 128 U. S., 471; 23 C. Cls., 104. The right of the officer to mileage and to salary are equally statutory and under the control of Congress. McDonald case, supra; Clancy case, 20 Comp. Dec., 741.
It is plain that the contention can not be maintained that the plaintiff by accepting his appointment waived the statutory allowance prescribed by the act of March 3, 1901, or that he estopped himself to claim the mileage authorized by *39 that act. We have considered the case as though the statement of the Secretary’s order that plaintiff should proceed at his own expense to Newport meant that his acceptance of the office would be upon condition that the Government would not be expected or required to pay his mileage. While we think such a condition would be illegal, and therefore of no binding force even if agreed to by the plaintiff, we do not say that said language imports the meaning which the Government’s contention would ascribe to it. The law as it existed under Revised Statutes, section 1566, provided for an allowance of 10 cents a mile to officers in the naval service, and further, that “ no officer shall be paid mileage except for travel actually performed at his own expense and in obedience to orders.” The latter act, that of March 3,1901, reduces the rate to 8 cents per mile, which, it is provided, shall be “in lieu of traveling expenses and all allowances whatsoever connected therewith, including transportation of baggage.” While the later act thus repeals the former law as to the rate and makes more definite the object of the allowance, it does not purport to repeal the provision above quoted to the effect that no officer shall be paid mileage except for travel actually performed at his own expense and under orders. It remains the law that the officer must travel at his own expense and under orders to be' entitled to the statutory allowance of mileage when “ traveling from point to point within the United States.” In charging him to travel to Newport at his own expense the Secretary did what the law required as a condition to receiving any travel allowance, and it is more reasonable to ascribe that purpose to the Secretary’s order than it is to adopt the view urged upon us, which we are obliged to condemn. A construction of a given act that renders it legal and preserves the rights of the parties is to be preferred to a construction that would make the same act illegal.
It follows that plaintiff is entitled to the two days’ “ waiting-orders pay ” allowed him by the auditor and to his mileage allowance, amounting in the aggregate to $274.81. And it is so ordered.
Hay, Judge, Barney, Judge, and Booth, Judge, concur.
Downey, Judge, took no part in the decision of this case.