### UNITED STATES ex rel. STAYTON v. PASCHALL, County Judge.

(District Court, E. D. Arkansas, W. D. December 2, 1925.)

No. 6659.

**1. Mandamus ⬡165—Demurrer to response relates back to first defective pleading, including petition.**

Demurrer to response relates back to first defective pleading, including petition.

**2. Mandamus ⬡115 —Duty of county or municipality to levy tax to pay bonded indebtedness held enforceable by mandamus.**

If state Legislature, in absence of constitutional prohibition, authorizes county or municipality to issue interest-bearing bonds, and to levy taxes to pay bonds, duty to levy tax may be enforced by mandamus, notwithstanding statute uses word "may."

**3. Mandamus ⬡116—Under Constitution of Arkansas, judgment creditor of county held not entitled to mandamus to compel levying of taxes to pay judgment against county.**

Under Const. Ark. art. 16, § 9, tax levy by counties in excess of five mills on the dollar of assessed value, except for existing indebtedness is void, and judgment creditor on county warrants issued under Crawford & Moses' Dig. §§ 1992, 1999, 2000, was not entitled to mandamus to compel tax levy in excess of such limitation, nor to have any part of taxes levied for general purposes, needed for ordinary expenses of government, appropriated to pay his judgment.

**4. Constitutional law ⬡143—Statute depriving holder of county warrants of rights held invalid as impairing obligation of contracts.**

If Const. Ark. Amend. 11, or enabling act March 23, 1925 (Acts Ark. 1925, pp. 608–610) §§ 1–4, deprived holders of county warrants issued under Crawford & Moses' Dig. §§ 1992, 1999, 2000, of their rights, it would violate Const. U. S. art. 1, § 10, prohibiting impairing obligation of contracts.

**5. Constitutional law ⬡144—To deprive owner of remedy existing at time contract was made is impairment of obligation of contract.**

To deprive owner of remedy existing at time contract was made is impairment of obligation of contract.

**6. Statutes ⬡227—Only when statute imposes positive duty will "may" be construed as "must."**

Only when statute imposes a positive duty, instead of discretionary power, will "may" be construed as "must."

[Ed. Note.—For other definitions see Words and Phrases, First and Second Series, May (in Statutes as Permissive or Mandatory).]

**7. Constitutional law ⬡20—Legislative construction of constitutional provision entitled to high consideration.**

Construction of constitutional provision by Legislature, though not conclusive on courts, is entitled to high consideration.

**8. Mandamus ⬡103, 115—Constitution and statutes of Arkansas held to make it discretionary with county and city officers whether to issue bonds and levy taxes to pay judgments.**

Const. Ark. Amend. 11, adopted Oct. 6, 1924, and Act March 23, 1925 (Acts Ark. 1925, pp. 608–610) §§ 1–4, held, as respects question of right to mandamus, to make it discretionary with county and city officers whether to issue bonds and levy taxes to pay judgment against county.

**9. Courts ⬡265—Writ of mandamus issued in aid of jurisdiction of federal courts only.**

Writs of mandamus may be issued by federal courts in aid of their jurisdiction only.

At Law. Mandamus by the United States, on the relation of W. L. Stayton, against J. W. Paschall, as County Judge of Lincoln County, Ark. Petition denied.

Buzbee, Pugh & Harrison, of Little Rock, Ark., for relator.

E. W. Brockman, of Pine Bluff, Ark., for respondent.

TRIEBER, District Judge. The allegations in the amended and substituted petition so far as necessary to a determination of the issues involved are:

That on December 24, 1923, the relator was awarded by a decree of this court a judgment against the county of Lincoln the sum of $90,500; that subsequent thereto this court issued a mandamus, directed to the proper officers of that county, commanding them to increase the assessment for taxation of all property in said county for the taxes of 1923 to the true value of the prop-

erty in money, and to continue to assess the property of said county for taxation at such value until $16,393.84 of said judgment should be paid; that said officers complied with said order, but that, notwithstanding said assessment of said property, no part of said judgment has been paid; that the maximum levy of taxes which could be levied on the property of said county under the Constitution of the state as then existing, for the payment of relator's judgment and other indebtedness and current expenses of the county, was five mills on the dollar, and said amount was levied; that under the system of taxation under the Constitution then in force there is no prospect for relator to collect the amount due on said judgment, nor any part thereof; that said judgment does not bear interest under the laws of the state, and relator is without hope of being able to collect the money adjudged to him, or any part thereof, unless granted the relief sought by this action. It then sets out Amendment No. 11 to the Constitution of the state, adopted October 6, 1924, which, so far as necessary, is as follows:

"Section 1. That section 4 of article 12 of the Constitution of the state of Arkansas be amended by adding thereto the following:

" 'The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of aldermen, board of public affairs, or commissioners, of any city of the first or second class, or any incorporated town enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrants, scrip or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk, or recorder, or any other officer or officers however designated of any city of the first or second class or incorporated town sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year.

" 'Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid.

" 'Where the annual report of any city or county in the state of Arkansas shows that scrip, warrants or other certificates of indebtedness had been issued in excess of the total revenue for that year, the officer or officers of the county or city or incorporated town who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office.' " Acts 1925, p. 1086.

That an enabling act to put this amendment into effect was passed by the General Assembly of the state of Arkansas, approved March 23, 1925, which, so far as necessary is as follows:

"Section 1. The county court of any county or the city or town council of any city or incorporated town may issue bonds for the purpose of funding the indebtedness of such county, city or town outstanding at the time of the adoption of Amendment No. 11 to the Constitution of the state of Arkansas, appearing on pages 797 to 799, inclusive, of the General Acts of the General Assembly of the state of Arkansas of the year 1923.

"Before the issue of any county or city bonds under this act, the county court shall by order entered upon its records, declare the total amount of such indebtedness or the city or town council shall, by ordinance, declare the total amount of such indebtedness. Such order of the county court shall be published immediately for one insertion in some newspaper published in the county, and such ordinances of the city or town council shall be immediately published in some newspaper issued in such city or town, if there be one, and if not, in some newspaper published in the county; and any property owner who is dissatisfied may, by suit in the chancery court of the county brought within thirty days after the publication of such order or ordinance have a review of the correctness of the finding made in such order or ordinance; but if no such suit is brought within

thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought the adjudication shall settle the question and appeal therefrom must be taken and perfected within thirty days. If any officer of such county, city or town shall willfully make any false statement as to the amount of its indebtedness, he shall forfeit his office and be ineligible to hold any other office of profit or trust in this state.

"Section 2. Such bonds shall be negotiable coupon bonds payable serially through a period of not exceeding forty years, and bearing a rate of interest not exceeding six per cent. per annum, the schedule of maturities to be so arranged that the total amount of principal and interest each year shall be substantially the same; but none of such bonds shall mature before September 1, 1926.

"Section 3. Such bonds shall not be sold for less than par, except that bonds may be sold at six per cent. with the privilege of conversion into bonds bearing lower rate on such terms that the county, city or town shall receive thereon and pay therefor substantially the same amount of money as on six per cent. bonds at par, and the proceeds thereof shall be used only in the payment of indebtedness of such county, city or town existing at the time of the adoption of said 11th Amendment to the Constitution. If any officer of any county, city or town shall use any part of the proceeds of such bonds for any other purpose he shall be deemed guilty of a felony and shall be imprisoned in the penitentiary for not less than one year.

"Section 4. Before or after the issue of said bonds the quorum court of such county or the city or town council of such city or town shall levy a tax, which, on the existing assessed value of the property of such county, city or town will suffice to retire said bonds as they mature, with five per cent. added for unforeseen contingencies: provided that said tax shall not exceed three mills on the dollar of such assessed value. If said tax proves insufficient to meet the maturities of the bonds with interest, it shall be the duty of the quorum court of such county or the city or town council to increase such levy of taxes, but not beyond three mills upon the dollar of the then assessed valuation; and if by reason of the increase in the assessed value of the property of such county, city or town a lower rate of tax will prove sufficient to meet the bonds and coupons as they mature, the amount of the tax may be lowered accordingly; but no tax shall be levied which will produce less than the sum required to meet the maturities of the bonds with five per cent. added for unforeseen contingencies, nor shall any tax in excess of three mills on the assessed value existing at the time of such levy ever be levied in any year. The money derived from such taxes shall be preserved as a separate fund for the redemption of such bonds and any officer of such county, city or town or any other person who uses any of such money for any other purpose shall be deemed guilty of a felony and imprisoned for a period not less than one year." Acts 1925, p. 608.

That the revenues of the county are not sufficient, under present laws, to enable the county to pay the whole or any substantial part of relator's judgment out of the revenue for any year, and that it cannot issue to relator warrants for the payment of any substantial part of the judgment without violation of Amendment No. 11 to the Constitution; that relator demanded of respondent to take steps to have such bonds issued, and a tax to pay the interest and bonds as they matured levied, which was refused.

The prayer is for a mandamus, commanding the respondent to issue bonds authorized and required by said amendment and the enabling act hereinbefore set out, and for all proper relief.

The respondent filed a response, to which the relator demurred. The judgment is on warrants of the county issued under the provisions of sections 1992, 1999 and 2000, Crawford & Moses' Digest of Arkansas Statutes.

[1] As the demurrer to the response relates back to the first defective pleading, including the petition, it is unnecessary, in view of the conclusions reached, to set out the answer. Thompson v. Jacoway, 97 Ark. 508, 134 S. W. 955; Board of Directors, etc., v. Dunbar, 107 Ark. 285, 155 S. W. 96; Aurora v. West, 74 U. S. (7 Wall.) 82, 93, 19 L. Ed. 42.

[2] It is beyond question that, if the Legislature of a state, in the absence of a constitutional provision prohibiting it, authorizes a county or municipality to issue interest-bearing bonds or other instruments of indebtedness, and by the act authorizes it to levy a tax to pay the same, although it may use the word "may," its duty to levy such a tax, if necessary to provide for their payment, it will, upon failure or refusal to do so, be compelled by mandamus. In such a case the word "may" will be construed as mandatory, as if the word "shall" had been employed instead of "may." A leading case on that point is Supervisors v. United States,

4 Wall. (71 U. S.) 435, 446, 18 L. Ed. 419, which has been followed ever since. The reason for this rule of law is that the provision to levy the necessary tax is a part of the contract.

Without citing the numerous authorities on that question, it is sufficient to refer to the cases decided to the same effect by the Circuit Court of the United States for this district, Judges Dillon and Caldwell presiding, in which it was uniformly held that, under the provision of section 9, art. 16, of the Constitution of the state, which reads, "No county shall levy a tax to exceed one-half of one per cent. for all purposes, but may levy an additional one-half of one per cent. to pay indebtedness existing at the time of the ratification of this Constitution," a judgment creditor of such indebtedness is entitled to enforce by mandamus this extra levy. See note, 4 Dill. 215, Fed. Cas. No. 12,794. Can this be held to apply to the question involved in the instant case?

[3] The Constitution of the state of Arkansas, adopted October 30, 1874, in force at the time these warrants were issued, limited the taxing power of counties of the state to five mills on the dollar of assessed value, excepting indebtedness existing at the time of its adoption. Section 9, art. 16. A tax in excess of this constitutional limitation is void, as has been held by the Supreme Court of the state in construing this provision. Desha County v. Chicot County, 73 Ark. 387, 84 S. W. 625; Gaither v. Gage, 82 Ark. 51, 100 S. W. 80.

A judgment creditor on such warrants is not entitled to the levy of a tax in excess of the constitutional limitation, nor to have any part of the tax levied for general purposes appropriated to pay his judgment, if needed for the ordinary expenses of the county government. United States ex rel. v. Miller County, 4 Dill. 233, Fed. Cas. No. 15,776, decided by the then Circuit Court for this district by Judges Dillon and Caldwell, following Supervisors v. United States ex rel., 85 U. S. (18 Wall.) 71, 21 L. Ed. 771. So the only question to be determined is: Does Amendment No. 11 to the Constitution of the state, and the enabling act of March 23, 1925, entitle the relator to have interest-bearing bonds issued and paid by the county in order to satisfy his judgment?

[4] The allegation that the county cannot issue to the relator warrants for the payment of any substantial part of the judgment without violating this amendment is without merit. At the times these warrants were issued the law of the state provided for issuing warrants on the treasurer to pay judgments against the county (section 1999, Crawford & Moses' Digest of Arkansas Statutes), and made the warrants receivable for all taxes and debts due the county (art. 16, § 10, Constitution; section 1993, Crawford & Moses' Digest). City of Little Rock v. United States ex rel. 103 F. 413, 43 C. C. A. 261. If the effect of the amendment or the enabling act deprive the holders of these warrants of their rights, they would be in violation of article 1, § 10, of the national Constitution, which prohibits the states from enacting any law impairing the obligation of contracts.

[5] To deprive one of a remedy existing at the time the contract was made is an impairment of the contract. Curran v. Arkansas, 15 How. (56 U. S.) 304, 315, 14 L. Ed. 705; Rees v. Watertown, 19 Wall. (86 U. S.) 107, 120, 22 L. Ed. 72; Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Forbes Boat Line v. Board of Comr's, 258 U. S. 338, 42 S. Ct. 325, 66 L. Ed. 647. There is no question of impairment of contract involved, as it is not claimed that, at the time the warrants were issued, there was any law authorizing their payment, except from a surplus in the treasury after the payment of the ordinary expenses of the county, and the petition alleges that there is no surplus, but by issuing warrants on the treasurer.

Counsel for relator rely mainly on Supervisors v. United States ex rel., 4 Wall. (71 U. S.) 435, 18 L. Ed. 419, and City of Little Rock v. United States, 103 F. 413, 43 C. C. A. 261. In Supervisors v. United States ex rel., the act expressly provided that "counties owing debts, which their current revenue, under existing laws, is not sufficient to pay, may, if deemed advisable, levy a special tax, not to exceed in any one year one per cent. upon the taxable property of any such county," etc. It will be noted that there was no question of issuing bonds, nor were there any conditions precedent to be performed by the county officers, nor any discretion left in the court, as in the constitutional provision and the enabling act herein involved, as will be referred to hereafter.

[6] It is only when the statute imposes a positive, instead of a discretionary, power, that "may" will be construed as "must." Minor v. Mechanics' Bank, 1 Pet. (26 U. S.) 46, 7 L. Ed. 47; Thompson v. Roe ex dem, 22 How. (63 U. S.) 422, 16 L. Ed. 387; United States v. Lexington Mill Co., 232 U. S. 399, 411, 34 S. Ct. 337, 58 L. Ed. 658, L. R. A. 1915B, 774; Farmers' Bank v. Federal Reserve Bank, 262 U. S. 649, 662, 43 S. Ct.

651, 67 L. Ed. 1157, 30 A. L. R. 635. As stated in Farmers' Bank v. Federal Reserve Bank: "It is true that in statutes the word 'may' is sometimes construed as 'shall.' But that is where the context, or the subject-matter, compels such construction." Wadsworth v. Supervisors, 102 U. S. 534, 538, 26 L. Ed. 221; United States v. Thoman, 156 U. S. 353, 359, 15 S. Ct. 378, 39 L. Ed. 450; United States v. Board of Directors, 229 F. 1, 9, 143 C. C. A. 303.

[7, 8] The proviso in the constitutional amendment provides that counties and cities may issue interest-bearing bonds to secure funds to pay indebtedness outstanding and levy a tax not exceeding three mills to pay them. That this was left to the discretion of the proper officers of the counties and cities is clearly evidenced by the enabling act, enacted by the General Assembly. While the construction of a provision of a constitution by the legislative department is not conclusive on the courts, it is entitled to high consideration.

This amendment was submitted by the General Assembly at its 1923 session, and the enabling act passed at the first session after its adoption. One-half of the members of the Senate of 1923 were members of that body at the 1925 session, or were what are usually spoken of as "hold-over senators," being elected for four years, or two sessions, and a large number of the members of the House of Representatives were members of both sessions. It is therefore reasonable to presume that they were aware of the intention of the General Assembly which submitted the amendment for ratification. Had it been the intention of the framers of the amendment or the enabling act to provide for the unconditional payment of the debts of counties and cities by the issuance and sale of interest-bearing bonds, without leaving it to the discretion of the proper officers, apt language to express it would have been used.

Aside from this, the enabling act prescribes certain conditions precedent before bonds can be issued. Section 1 of the enabling act, as hereinbefore set out, provides that, "before the issue of * * * bonds under this act, the county court shall by order entered upon its records declare the total amount of such indebtedness. * * * Such order of the county court shall be published immediately for one insertion in some newspaper published in the county. * * * Any property owner, who is dissatisfied, may, by suit, in the chancery court of the county, * * * have a review of the correctness of the finding made in such order."

9 F.(2d)—8

There is no allegation in the petition that this was done by the respondent. Nor is there any allegation that the indebtedness due the relator is the entire indebtedness of the county. There has been no ascertainment of the entire indebtedness of the county, no publication as required, and therefore no opportunity to property owners to file a complaint for review.

Section 2 of the enabling act leaves it to the discretion of the proper county or city officials to determine the maturity of the bonds, and that they be payable serially through a period of not exceeding 40 years. Is this court to determine the maturity of the serial bonds? If so, it will be necessary for this court to ascertain the entire indebtedness of the county, its taxable property, the revenue from all sources, and what amount can be realized from a three-mill tax annually, to determine the period for which bonds shall be issued. This court is clearly without jurisdiction to do so. The indebtedness of some of the counties or cities may be so small that its officers are justified in concluding that the indebtedness may be paid off out of the ordinary revenues within a year or two; would a holder of such indebtedness still be entitled to have a mandamus issued, compelling it to issue interest-bearing bonds, for the reason that the warrants or judgment held by him do not bear interest? Is there no discretion left to the officials of the county? If counsel for relator is right, the court would be required to do so.

If this court should make such finding and grant the mandamus, could any property owner of Lincoln county institute an action in the chancery court of Lincoln county to have a review of the finding made by this court, as authorized by the enabling act, and would that court have jurisdiction to review the finding made? Clearly not, for that would be exercising appellate jurisdiction of a judgment of this court.

[9] Nor would the remedy be confined to judgment creditors, for, while the courts of the United States only possess jurisdiction to issue writs of mandamus in aid of their jurisdiction (Chicaming v. Carpenter, 106 U. S. 663, 665, 1 S. Ct. 620, 27 L. Ed. 307; Covington, etc., Bridge Co. v. Hager, 203 U. S. 109, 27 S. Ct. 24, 51 L. Ed. 111; In re Higdon [D. C.] 269 F. 150), the state courts may issue the writ in an original proceeding, thus enabling any holders of county warrants to obtain a mandamus, as asked in this proceeding. If relator's contention is to be sustained, this court could only direct the issue and sale of bonds to satisfy his judgment, for, as

stated, the court is without jurisdiction to grant the writ, except in aid of its judgment in favor of the relator. Yet the act requires the ascertainment of the total indebtedness and an issue of bonds for the entire indebtedness.

Can this court usurp the power to ascertain the facts, which under the statute are conditions precedent, and the jurisdiction granted to the county officials? City of Little Rock v. United States can have no possible application to the issue in the instant case. In that case the relator had a judgment against the city, which was uncollectible for the reasons stated in United States v. Miller County, supra; but under the statutes in force he was entitled to have the judgment paid by city warrants, which could be used for the payment of taxes and dues to the city, as is the case in the case at bar. The city of Little Rock refused to issue the warrants, and the court held it could be compelled to do so by mandamus.

Kirk v. High (Ark.) 273 S. W. 389, also relied on in behalf of relator, throws no light whatever on the question involved in this case. All that the Supreme Court there decided was that the amendment does not prohibit counties from contracting for the erection of courthouses and jails, provided the payments therefor are provided for in future years, and the annual apportionment of payments does not exceed, with other governmental expenditures, the yearly revenue. In this construction of the amendment the court went to the extreme limit of construction, stating as a reason: Courthouses and jails are absolutely necessary in the administration of the state government, and I do not think the amendment under consideration was designed to take away the powers, in respect to repairing and erecting courthouses and jails, which were possessed before the adoption."

In that case the Chief Justice dissented in a vigorous opinion. Considering the context of the amendment and the enabling act as entireties, as is the duty of the courts in construing them, it is impossible to hold that the word "may" should be construed as mandatory, and not merely persuasive. Gardiner Savings Inst. v. Hogsett, 192 F. 878, 882, 113 C. C. A. 202. It seems that the respondent county, in order to provide for redemption of its outstanding indebtedness, levied a tax of three mills, as if bonds had been issued. But counsel for both parties concede that this levy is in violation of the Constitution, and therefore void.

The petition for mandamus is denied.