August 18, 1978

## 78-46 MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL AND THE DEPUTY ATTORNEY GENERAL

### Voluntary Services (31 U.S.C. § 665(b), 5 U.S.C. § 3111)—Use of Student Volunteers

This concerns the Civil Rights Division's memorandum to the Associate Attorney General and the Deputy Attorney General raising the issue of the legality of the Department accepting the uncompensated services of student volunteers. This is usually done incident to an academic program in which the student performs supervised outside work for academic credit.

The specific issue posed is whether 31 U.S.C. § 665(b) or any other authority precludes the Department from accepting uncompensated services by students who are "given assignments that would aid the Department in its mission." The Office of Management and Finance believes this is not permissible. We agree.

Section 665(b) provides that:

> No officer or employee of the United States shall accept voluntary service for the United States or employ personal service in excess of that authorized by law, except in cases of emergency involving the safety of human life or the protection of property.

On its face, the statute appears to prohibit the acceptance of all nonemergency voluntary service. However, an opinion of the Attorney General construing this provision states:

> [I]t seems plain that the words "voluntary service" were not intended to be synonymous with "gratuitous service" and were not intended to cover services rendered in an official capacity under regular appointment to an office otherwise permitted by law to be nonsalaried. In their ordinary and normal meaning these words refer to service intruded by a private person as a "volunteer" and not rendered pursuant to any prior contract or obligation. [30 Op. Att'y Gen. 51, 52 (1913)]

The Attorney General concluded that the prohibition was designed to prevent "the acceptance of unauthorized services not intended or agreed to be gratuitous and therefore likely to afford a basis for a future claim upon Congress." *Id.*, at 55. *See also* 27 Comp. Gen. 194, 195 (1947). Thus § 665(b) does not necessarily preclude an Agency from accepting uncompensated service where it is clear that there will be no subsequent claim for compensation.

It is important to note that the opinion further concludes that employees cannot waive statutorily fixed compensation or any part thereof. 30 Op. Att'y Gen., *supra*, at 56. *See also, Glavey* v. *United States*, 182 U.S. 595, 609-610 (1909); *United States* v. *Andrews*, 240 U.S. 90 (1916); 27 Comp. Dec. 131, 133 (1920).[1] In *Glavey*, the Court quoted with approval from the opinion of Judge Lacombe in *Miller* v. *United States*, 103 Fed. 413, 415 (S.D.N.Y. 1900). Judge Lacombe stated:

> It is to be assumed that Congress fixes the salary with due regard to the work to be performed, and the grade of man that such salary may secure. It would lead to the grossest abuses if a candidate and the executive officer who selects him may combine together so as entirely to exclude from consideration the whole class of men who are willing to take the office on the salary Congress has fixed, but will not come for less. And, if public policy prohibit such a bargain in advance, it would seem that a court should be astute not to give effect to such illegal contract by indirection, as by spelling out a waiver or estoppel. [*See* 182 U.S. at 609.]

Reasoning from this, the Court in *Glavey* stated:

> If it were held otherwise, the result would be that the Heads of Executive Departments could provide, in respect of all offices with fixed salaries attached and which they could fill by appointments, that the incumbents should not have the compensation established by Congress, but should perform the service connected with their respective positions for such compensation as the head of a Department, under all the circumstances, deemed to be fair and adequate. In this way the subject of salaries for public officers would be under the control of the Executive Department of the Government. Public policy forbids the recognition of any such power as belonging to the head of an Executive Department. The distribution of officers upon such a basis suggests evils in the administration of public affairs which it cannot be supposed Congress intended to produce by its legislation. [*Ibid.*]

Thus, if a position falls under the classification provisions of 5 U.S.C. § 1501 *et seq.*, the compensation cannot be waived since compensation for the

---

[1]The Attorney General stated:

"Of course, I do not mean by anything I have said herein to intimate that persons may be appointed without compensation to any position to which Congress has by law attached compensation."

position is statutorily fixed. *See* 26 Comp. Gen. 956, 958 (1947); Chap. 311-4, FPM (revised July 1969). If, however, a statute authorizes appointments to particular positions without regard to the civil service laws, or confers discretion in the appointing officer as to compensation, there is no bar to the acceptance of uncompensated services. 27 Comp. Gen. 194 (1947); 27 Comp. Dec. 131, *supra*.

The question of the propriety of an Agency accepting uncompensated services in student intern programs involving assignment to "productive work, *i.e.*, to the regular work of the Agency in a position which would ordinarily fall in the competitive service" was raised by the Civil Service Commission in 1947. The Comptroller General concluded that, absent specific statutory authority, an appointee to a position in the Federal service cannot legally waive the compensation fixed by law for that position. 26 Comp. Gen., *supra*, at 961.

It is worthy of note that the Civil Service Commission in requesting the opinion on the student intern program limited its request as follows:

> This situation, of course, is distinguishable from a college student serving as an "intern" in the capacity of an outside student or investigator, observing the work of a government unit, performing tasks which fall outside the usual functions of the unit, or utilizing its facilities primarily for the benefit of his own educational advancement. Although the results of the intern's work would be interesting, and probably useful to the agency in such a case, the work would not be authorized as an official task or project and would ordinarily be incidental or supplemental to the intern's undergraduate or postgraduate study in the educational institution. The question does not involve the propriety of such arrangements. [*Id.*, at 957]

The Civil Service Commission in its Bulletin No. 308-15, July 12, 1974, deals with the subject of "Providing Work Experience for Students in a Nonpay Status." The Commission believes that, even absent statutory authority to accept voluntary services, such limited programs are permissible. The rationale is that a participant in such a program renders no service to the Government because his work does not further the Agency's mission. Therefore § 665(b) has no application.

We now consider the application of the above principles to the issue at hand. Section 665(b) is not a bar because it is understood by all concerned parties that no financial remuneration will be given for the students' services. But if the students fill positions having statutorily fixed minimum compensation, considerations other than § 665(b) preclude the acceptance of voluntary services. *See* 30 Op. Att'y Gen., *supra*, at 56; 26 Comp. Gen. 956, *supra*. It appears that the students fill such positions. Although we have been informed by the Office of Management and Finance that the students are not formally appointed in the Federal service, it is only this technicality that distinguishes them from other Agency employees.[2] This omission does not permit the acceptance of voluntary

---

[2]Section 2105(a), title 5 U.S. Code, defines an employee as one who (1) performs a Federal function, (2) is under the supervision of a Federal employee, and (3) has been appointed in the civil service by an appropriate official.

services. If it did, the prohibition against accepting voluntary services where there is a fixed compensation would be no prohibition at all. Because all of the requisites of employee status except formal appointment are met, a *de facto* appointment exists.[3]

The Department would prefer student programs that are both beneficial to the student and further the Department's mission. But those objectives can only be accomplished pursuant to legislative authority. The only uncompensated student services that the Department may accept are those in which student volunteers do not perform productive work for the benefit of the Department.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3]We have been unable to find any statute authorizing the Department to accept the services here involved without compensation. (It should be noted that by § 301(a) of the Civil Service Reform Act of 1978, Pub. L. 95-454 (Oct. 13, 1978), 92 Stat. 1144, 5 U.S.C. § 3111, Congress has now authorized Agencies to accept uncompensated services of student volunteers.)